Raymond C. RACINE, et al.,
Plaintiffs–Appellants–Cross–Respondents,

v.

GLENDALE SHOOTING CLUB, INC.,
Defendant–Respondent–Cross–Appellant.

No. 52799.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 14, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 20, 1988.

Application to Transfer Denied
Sept. 13, 1988.

David L. Baylard, Union, for plaintiffs-appellants-cross-respondents.

Gael Davis Wood, Washington, Kenneth A. Slavens, St. Louis, for defendant-respondent-cross-appellant.

Charles M. Shaw, St. Louis, Bradley S. Dede, Clayton, amicus curiae for Nat. Rifle Assn.

SMITH, Judge.

Both parties appeal in this court-tried case arising from claims of nuisance and trespass.

The parties own adjoining land in a rural section of Franklin County. Plaintiffs' land encompasses 78 acres, including their home and outbuildings, and lies east of defendant's land. Plaintiffs originally acquired their land in 1967. Defendant's land is larger in size (approximately 107 acres) and on its western boundary adjoins the Meramec River. Defendant is a social club with 200 members. It acquired the property in 1976 for use as a gun club. At the time of acquisition plaintiffs did not object to the use of the land as a gun club and believed the new ownership would put an end to the constant use of the property by large numbers of "hippies" going to the river. Plaintiff Ray Racine joined the club in 1976, used it on a few occasions and did some work to help the club set up. He retained his membership until 1983.

In August, 1983, plaintiffs filed their four count petition against defendant seeking injunctive relief, actual damages and punitive damages. Count I alleged that since "approximately June 1982" defendant had utilized the land "for target practice, local, regional and national shooting matches conducted with automatic weapons, handguns, shotguns and high powered rifles." They then alleged that the noise from the defendant's property "on a daily basis at all hours of the day and night" could be "plainly and loudly heard at plaintiff's residence, even when the doors and windows to said residence are fully closed." On this count for nuisance, plaintiffs sought an injunction permanently enjoining defendant from conducting target practice and shooting matches on its property and for actual and punitive damages. Count II sought actual and punitive damages for ricochets from defendant's property which entered or crossed over plaintiffs' property. Count III for extreme and outrageous conduct, and Count IV for emotional distress, were dismissed by the trial court in its final judgment. No issue about those counts has been raised or is before us.

Following trial the court entered its original judgment on November 19, 1986. The court denied defendant's motion to dismiss on the basis of laches and the statute of limitations; found a "technical trespass" from the "stray bullets or ricochets" but no evidence of any measurable damages and awarded $10 nominal damages; found "an abatable continuing temporary nuisance" for a period of at least five years preceding the filing of the petition through the date of trial. On the nuisance claim the court awarded damages of $200 per month from August 1978 through October 1985, totaling $17,000. It further permanently enjoined defendant:

> "from using its property in such a manner as described by the evidence to encourage or permit the frequent discharge of large caliber, high powered firearms. Continuous firing and the conducting of shooting matches or meets is prohibited as is any target shooting before nine o'clock of the morning and after dark or six o'clock of the evening. Occasionaly [sic] shooting is not prohibited."

On November 26, plaintiffs filed their "motion for new trial on the issue of damages and motion for clarification of award

of monetary damages and award of injunctive relief." On December 2, defendant filed its "proposed specific orders to be adopted and incorporated into the court's injunction order." Both of these documents sought clarification of the original judgment and offered proposed language to be included therein. On February 2, 1987, the court entered its order modifying the November 19 judgment and a new judgment incorporating those modifications. The damages for loss of use of the plaintiff's property was increased to $17,200 as a mathematical correction. The plaintiffs were also awarded $6,000 for "their physical discomfort caused by the nuisance for over seven years." The injunctive provisions were modified to make them more definite. The discharge of large caliber, high-powered firearms and continuous firing was prohibited except as specified in the judgment. Any firing before 9:00 a.m. or after the earlier of after dark or 6:00 p.m. was prohibited. Defendant was permitted to have no more than ten shooting matches per year with no more than two of those high-power rifle matches and with a limit of twenty persons permitted to shoot at one time. No more than two matches per month were permitted utilizing no more than one Sunday per month. In pistol matches no more than eight persons could be shooting at one time, and the eight person limit also applied to all other shooting on the ranges other than during rifle matches. Shooting of weapons of more than .22 caliber was allowed only during rifle matches or between 9 a.m. and 6:00 p.m. on Tuesdays, Thursdays, and Saturdays. No restriction was imposed on shooting .22 caliber rimfire weapons except the time of day restrictions. At shooting matches a trained range safety officer was required to be in supervision. The modifications to the November 19 judgment included suggestions contained in the post-trial documents from each of the parties. As previously stated, both parties appealed.

In addressing the issues raised in the two appeals, it is important to note plaintiffs' position set forth in both their petition and their proof at trial. Essentially they did not claim the operation of the gun club became unreasonable as to them until June of 1982. In its earliest year the gun club had one firing range; by trial time there were five with more intended to be built. In 1976 there were only two organized shooting events; by 1985 there were fifty. The number of participants at matches as well as the number of rounds fired at matches and the number of high-power matches had all dramatically increased. The noise coming from the club in the period from 1982 on was loud and constant, frequently commencing before 8:00 a.m. and continuing until dark. When matches were going on the firing was described as being like a "war." There was a great deal of testimony to support a conclusion that the constancy and volume of the shooting from 1982 on had assumed a character and excessiveness sufficient to move it from the category of bearable irritant to nuisance.

The general rule is that a property owner has the right to exclusive possession and control of his property and the right to devote it to any type of lawful use which satisfies his interests. *City of Fredricktown v. Osborn*, 429 S.W.2d 17 (Mo. App.1968) [2–7]. The right, however, is not absolute and one may not make such an unreasonable use of his property that it substantially impairs the right of another to peacefully enjoy his property. *Id.* Whether a particular use is an unreasonable invasion of another's use and enjoyment of his property so as to constitute a nuisance must be determined from the facts in each case, such as locality, character of neighborhood, nature of use, extent and frequency of injury, and the effect upon enjoyment of life, health, and property of those affected. *Id., Clinic & Hospital v. McConnell*, 236 S.W.2d 384 (Mo.App. 1951) [8–11]. Noise is not a nuisance per se but may be of such a character or so excessive as to become one, even though it arises from operation of a lawful business. *Clinic v. McConnell, supra*, [7]; *City of Fredricktown v. Osborn, supra*, [8]; *Lee v. Rolla Speedway, Inc.*, 668 S.W.2d 200 (Mo. App.1984) [4].

Plaintiffs' suit was brought to abate a private nuisance as to them. Their pleading and testimony related to the use of the club property after June of 1982. Until that point the use of the club was not, as to them, a nuisance. By their pleading and testimony they have, for purposes of this suit, acknowledged that until that time the defendant's use of the premises did not substantially impair their right to peacefully enjoy their property. That acknowledgement effectively disposes of several issues raised by the parties.

 There was no error in denying defendant's motion to dismiss on the basis of limitations and laches. Suit was brought within fifteen months of the June 1982 date, well within any statute applicable. The change of position utilized by defendant to support its laches position occurred predominately prior to June 1982 and there was little evidence of any substantial change between June 1982 and August 1983.

 Plaintiffs by their pleadings sought damages arising from the nuisance created in June 1982. The trial court awarded damages from August 1978. That relief was beyond that sought in plaintiffs' petition and beyond the nuisance claimed by plaintiffs to have been created in June 1982. The evidence adduced concerning the club's activities prior to June 1982, was relevant to the background of the nuisance created in 1982 and, as the case was tried, to the defendant's defenses of laches and limitations. Before evidence admitted without objection will give rise to amendment of the pleadings by implied consent, such evidence must bear only on that issue and not be relevant to an issue already in the case. *Brazell v. St. Louis Southwestern Railway Co.*, 632 S.W.2d 277 (Mo.App.1982) [1–5]; *Shaw v. Burlington Northern, Inc.*, 617 S.W.2d 455 (Mo. App. 1981) [3, 4]. Plaintiffs' damages from the nuisance must be limited to the period covered by the pleadings and the cause must be remanded for assessment of those damages.

 The monthly decrease in rental value is supported by Ray Racine's testimony of the reasonable rental value without the club ($300) and his assessment of its rental value with the club ($0). His expert placed the decrease at $100 per month but the trial court was in a position to evaluate the weight to be given to each of these witnesses. It obviously arrived at a figure between the two opinions. The "physical discomfort" award was similarly based on a period beyond that covered by the pleadings. Because of the increase in club activity continuously after August 1978, we cannot presume that the award made was simply an equal proration for each year or month throughout the period. The court may well have concluded that the level of discomfort in the later years comprised by far the greater portion of the damages awarded. We cannot therefore enter a judgment for physical discomfort damages through proration.

 We also reject plaintiffs' contention that the trial court erred in issuing a limited injunction rather than a complete injunction after finding the existence of a nuisance. The trial court's relief was an effort to restrict the club's activities to a level which did not constitute a substantial impairment of plaintiff's peaceful enjoyment of their property. The injunctive relief granted does not clearly allow a use beyond that found to be acceptable by plaintiffs prior to June 1982. Similarly, we reject plaintiffs' contention that having issued an injunction which did not preclude all discharging of high-powered guns the trial court erred in failing to award plaintiffs' permanent damages for the continuing nuisance. The short answer is that the court abated the nuisance identified by the plaintiffs so there is no permanent damage from that nuisance. That the court failed to abate uses which plaintiffs neither pleaded nor proved were a nuisance cannot serve as a basis for error.

We also reject plaintiffs' contention that the final judgment modified the November 19 judgment without the filing by defendant of a motion for new trial or for an amended judgment. While neither title was utilized in defendant's post-trial motion, the clear impact of defendant's filing

on December 2, and the relief requested therein, was a modification of the judgment which was seriously lacking in specificity as recognized by both parties. We treat the document by its content not its title. *Ford v. Boone County*, 654 S.W.2d 169 (Mo.App.1983) [n. 3].

The parties have joined issue on whether the nuisance here is permanent or temporary. It is the character of the source of injury rather than the character of the injury which determines between a permanent or temporary nuisance. *Rebel v. Big Tarkio Drainage Dist.*, 602 S.W.2d 787 (Mo.App.1980) [18, 19] *disapproved on other grounds, Frank v. Environmental Sanitation Management*, 687 S.W.2d 876 (Mo. banc 1985). A permanent nuisance must result from a permanent construction which is necessarily injurious as installed not from one which becomes injurious through its use. The distinguishing feature between a permanent and temporary nuisance is the "abatability" of the nuisance. *Spain v. City of Cape Girardeau*, 484 S.W.2d 498 (Mo.App.1972) [3]. The distinction is generally important in two respects—the statute of limitations and the measure of damages. Here, as we have previously stated, the plaintiffs have not chosen to bring this action as an attack on the presence of a gun club itself, but upon the level of activity conducted on the premises. The level of activity is abatable and the nuisance pleaded and proven is temporary. We find no error in the trial court's conclusion in that regard.

Defendant challenges the giving of injunctive relief on two bases, i.e. (1) that no nuisance was established and (2) that balancing the utility of defendant's conduct against plaintiffs' harm does not warrant an injunction. *See, Lee v. Rolla Speedway, Incorporated*, 494 S.W.2d 349 (Mo.1973) [2]. As to the first basis the evidence clearly supports the finding of nuisance under the scope of review allowed us in this case. The noise emanating from the defendant's property in character, intensity, volume, constancy, and frequency was thoroughly documented by both lay and expert testimony. It differed in all five respects from the occasional train traffic or random gun shots heard and expected in this rural area. It was the kind of noise emission making use of plaintiffs' nearby residential property virtually impossible. As such it was an unreasonable use which substantially impaired the right of plaintiffs to peacefully enjoy their property. As such it was a nuisance.

Much of defendant's second basis arises from its argument (supported by the amicus) of the value and utility of gun clubs. We need not discuss that value and utility and for purposes of this opinion it may be conceded. The injunction does not destroy the gun club or prevent its operation. It does restrict that operation to a level which does not interfere with the plaintiffs' peaceful use and enjoyment of their property. That very concept was enunciated in a case relied upon by defendant purporting to hold that gun clubs are not nuisances. *Smith v. Western Wayne County Conservation Association*, 380 Mich. 526, 158 N.W.2d 463 (1968). Nor does the permanent injunction preclude the defendant from hereafter seeking its modification if it decides to enclose its facilities or in some other way diffuse the sounds of its previous operation to a non-nuisance level. *See, Lee v. Rolla Speedway, Inc.*, 668 S.W.2d 200 (Mo.App.1984).

Finally we reject defendant's contention that the finding of trespass was not established by the evidence. It is a reasonable inference that bullets heard passing over plaintiffs' property coming from the direction of the club while shooting was being conducted there emanated from that source.

Award of damages for nuisance reversed and remanded for reconsideration in accordance with this opinion. In all other respects the judgment is affirmed.

KAROHL, P.J., and KELLY, J., concur.