**Jackie VERMILLION and Nolan Vermillion, Appellants,**

v.

**PIONEER GUN CLUB, Respondent.**

No. WD 50670.

Missouri Court of Appeals,
Western District.

Jan. 23, 1996.

As Modified Feb. 27, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 1996.

Application to Transfer Denied
April 23, 1996.

Kurt H. King, Liberty, for appellants.

John Mullen, Kansas City, for respondent.

Before ELLIS, P.J., and HANNA and SPINDEN, JJ.

SPINDEN, Judge.

Jackie and Nolan Vermillion sued the Pioneer Gun Club in 1993 after bullets from the nearby gun club began straying onto their property. They claimed that bullets from weapons fired on Pioneer's outdoor ranges hit their house, their trees and other property, constituting a private nuisance, trespass, negligence, and causing emotional distress. The circuit court ruled for the Vermillions on the nuisance and trespass claims and for Pioneer on the negligence and emotional distress claims. We affirm in part, reverse in part, and remand for further proceedings.

The Vermillions bought a 10–acre tract in rural Johnson County in 1984 and moved there in 1986. The same year, Pioneer bought approximately 380 acres next to the Vermillions' land and moved in to establish a firing range complex. Pioneer had operated in the Kansas City area since 1940 and had approximately 600 members.

The neighbors got along fine until 1988 when Pioneer constructed a high-power, silhouette range which required users to fire toward the Vermillions' property. The range ended about 675 feet from Pioneer's last berm before the Vermillions' property, and the Vermillions' house was approximately 1200 feet from Pioneer's property line. Pioneer designed the range after consulting with a National Rifle Association guide but did not completely comply with the guidelines. Pioneer also maintained other firing ranges on the site. Pioneer's former president, Leon Cross, said that he first became aware that bullets were straying onto the Vermillions' property in 1991 when, on April 21, they informed Pioneer that a bullet had ended up in their house's wall. On February 18, 1992, the Vermillions agreed to release all their claims against Pioneer in connection with the April 21, 1991, incident for $500.

Between August 1992 and September 1994, bullets or ricochets continued straying from the gun club onto the Vermillions' property. In March 1993, the Vermillions filed a four-count petition against Pioneer. In August 1993, they filed an amended petition seeking injunctive relief, actual and punitive damages. The petition alleged that the shooting of firearms on the gun club's open ranges resulted in bullets passing over or onto their land, and that this constituted a private nuisance, trespass, negligence and caused emotional distress.[1]

The first trial of the case in January 1994 was interrupted by a declaration of mistrial. The case was retried before a judge in October 1994. On December 29, 1994, the circuit court found that from the time Pioneer began using the silhouette range in 1988, bullets or ricochets strayed onto the Vermillions' property at least 14 times between August 1992 and September 1994. The court found that the bullets, fragments and ricochets were from weapons fired on Pioneer's silhouette range and that the range was a permanent nuisance. The court also found that Pioneer had directly interfered physically with the Vermillions' property and their right of enjoyment. The court enjoined Pioneer and its members from (1) firing any weapons on the silhouette range as it was then configured; (2) firing toward the Vermillions' property on any open firing range; and (3) constructing a high-power, silhouette range anywhere on its property unless it placed compacted, 20–foot berms behind the targets and modified the range to comply with other specifications ordered by the court.

The court awarded $3000 in damages on the nuisance claim and $7000 on the trespass claim ($500 for each of the 14 incidents). It did not award any punitive damages because it did not find "the legal malice necessary to

---

1. Pioneer filed a motion for partial summary judgment asserting that pursuant to § 537.294, RSMo 1994, the gun club was immune from any claim for nuisance or trespass based on noise emission on its open firing range. The court sustained the motion for partial summary judgment, and the Vermillions do not challenge that order.

impute nor allow punitive damages to be awarded." The court found for Pioneer on the negligence and emotional distress claims. The Vermillions appeal.

In the first of eight points raised on appeal, the Vermillions contend that the circuit court's conclusion that Pioneer's silhouette range constituted a permanent nuisance—rather than a temporary nuisance—was erroneous. They argue that the nuisance was temporary because it was abatable. We agree.

■■■ "An action for private nuisance rests on tort liability and is based upon an unreasonable interference with the use and enjoyment of land." *Schwartz v. Mills,* 685 S.W.2d 956, 958 (Mo.App.1985). The source of the injury, rather than the injury itself, is generally the determining factor in deciding whether a nuisance is permanent or temporary. It is an issue of law rather than fact. *Campbell v. Anderson,* 866 S.W.2d 139, 143 (Mo.App.1993). "The distinguishing feature between a permanent and temporary nuisance is the 'abatability' of the nuisance." *Racine v. Glendale Shooting Club, Inc.,* 755 S.W.2d 369, 374 (Mo.App.1988). When a nuisance's abatement is reasonable and practical, it is a temporary nuisance. *Campbell,* 866 S.W.2d at 143. A temporary nuisance may be abated at any time by a reasonable effort or by an order of the court. *Stevinson v. Deffenbaugh Industries,* 870 S.W.2d 851, 855 (Mo.App.1993). A permanent nuisance generally results from a permanent construction which is injurious as installed, rather than injurious through its use, *Racine,* 755 S.W.2d at 374, and where abatement would be impracticable or impossible. *Stevinson,* 870 S.W.2d at 854.

We are especially guided by *Racine,* 755 S.W.2d at 369. Considering facts markedly similar to the Vermillions' case, the *Racine* court concluded that the nuisance was abatable and temporary. It noted that the plaintiffs' action was not an attack on the presence of the gun club itself, but on the level of activity conducted on the premises. *Id.* at 374.

■■■ In the Vermillions' case, bullets did not begin straying onto the Vermillions'

property until after Pioneer began using the silhouette range in 1988. The nuisance which resulted from the club's shooting activities was abated by court order in December 1994. This suggests that the nuisance was abatable and temporary.

■■■ Pioneer argues, nevertheless, that the nuisance was permanent because the Vermillions' petition did not specifically plead a temporary nuisance or temporary nuisance damages. This does not make a difference. Although it did not use the term "temporary nuisance," the petition pleaded facts and prayed for relief which sufficiently established that its claim was for abatement of a temporary nuisance. It alleged that bullets from the gun club substantially impaired and diminished their use and enjoyment of their property, and it prayed for an injunction to abate the nuisance. It did not complain of the gun club's existence, but of the open range shooting activities. Moreover, the court's order did not restrict all of the club's shooting activities or prohibit the club from using its property for other sports activities. That the petition mentioned that the property had decreased in market value did not transform the Vermillions' cause into an action for a permanent nuisance.

■■■ If allegations are doubtful as to whether the pleaded cause of action is for a permanent nuisance or a temporary nuisance, courts should treat the nuisance as temporary. *Rebel v. Big Tarkio Drainage District,* 602 S.W.2d 787, 794 (Mo.App.1980) (disapproved on other grounds, *Frank v. Environmental Sanitation Management,* 687 S.W.2d 876 (Mo. banc 1985)). The shooting of firearms on the silhouette range in the direction of the Vermillions' property was an abatable, private nuisance, as evidenced by the injunctive relief granted by the circuit court. The circuit court erred as a matter of law in concluding that the nuisance was permanent.

■■■ The Vermillions also contend that the circuit court's award of damages for the nuisance claim was incorrect because it did not include damages for loss of rental value, mental anguish, impairment of health or physical discomfort. The measure of dam-

ages caused by a temporary nuisance is the amount the property's rental value decreases during the nuisance's duration. It also includes other incidents of damage such as loss of comfort and health. *Fletcher v. City of Independence*, 708 S.W.2d 158, 178 (Mo.App. 1986). Because of our disposition of the first point, the circuit court will have an opportunity to redetermine its damage award. If its award did not include the items listed above, it shall recalculate its award.

The Vermillions also contend that the circuit court erred in denying their negligence claim. The circuit court's order said that "on Count II [for negligence] the issues are found in favor of [Pioneer] and against [the Vermillions]." They argue that the evidence established that Pioneer breached its duty to them and caused injuries.

██ The circuit court did not explain in its findings of fact and conclusions of law the reason for ruling against the Vermillions.[2] It appears inconsistent with the remainder of its findings and conclusions. The circuit court found that Pioneer's acts "in the operation of that portion of the firearm range designated the high power silhouette range are deliberate and continuous[.]" Pioneer speculates that the circuit court concluded that the Vermillions did not prove that they were damaged. Yet, the circuit court concluded "[t]hat the maintenance and operation of the high power silhouette range by defendant is a nuisance to [the Vermillions] and is causing irreparable damage to their property and property rights." We recognize that the circuit court could have concluded that the damages awarded for the nuisance overlapped with any damages for negligence, but, had this been the case, this should not have caused the circuit court to deny the Vermillions' negligence claim.

██ In an action for negligence, the plaintiff must show that (1) the defendant had a duty to the plaintiff; (2) the defendant failed to perform this duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury. *Martin v. Washington*, 848 S.W.2d 487, 493 (Mo. banc 1993). "A possessor of land is subject to liability for

physical harm to others outside of the land caused by an activity carried on by him thereon which he realizes or should realize will involve an unreasonable risk of physical harm to them under the same conditions as though the activity were carried on at a neutral place." *Mills v. Crawford*, 822 S.W.2d 548, 551 (Mo.App.1992)(*citing* RESTATEMENT (SECOND) OF TORTS § 371 (1965)). Although in a negligence suit the defendant is generally held to an ordinary standard of care, the defendant must exercise a "very high degree of care" when dealing with firearms. *Lee v. Hartwig*, 848 S.W.2d at 496, 500 (Mo.App.1992).

We agree with the Vermillions that the circuit court's ruling appears to have been contrary to the overwhelming weight of the evidence. Because we have already determined that the case must be remanded, we further instruct the circuit court to reconsider this issue. If it persists in its conclusion that the Vermillions did not make a case of negligence, the court shall explain fully in its findings of fact and conclusions of law the basis for its decision. If upon reconsideration it concludes that it should have ruled for the Vermillions on the negligence claim, it shall vacate that portion of its judgment and enter a new one ruling for the Vermillions. To the extent that the negligence damages overlap with the nuisance damages, the Vermillions will be considered to have been made whole.

The Vermillions further contend that the court erred in finding that the evidence was insufficient to support their claim of negligent infliction of emotional distress. We disagree.

██ To make a case for negligent infliction of emotional distress, a plaintiff must prove that (1) the defendant should have realized that his or her conduct involved an unreasonable risk of causing the plaintiff distress; and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant. *Bass v. Nooney*, 646 S.W.2d 765, 772–73 (Mo. banc 1983).

2. The parties asked for findings of fact and con-  clusions of law pursuant to Rule 73.01(a)(3).

■ The circuit court heard evidence from Glenn Barr, a physician who treated Jackie Vermillion, that in October 1991, tests indicated that she suffered from Epstein–Barr Syndrome, also called "chronic fatigue syndrome." He said that the syndrome manifested the same symptoms as persons suffering emotional distress: loss of sleep, depression, fatigue, weakness and hyper-sensitivity. Jackie Vermillion complained of those symptoms in October 1991, Barr said, but his medical notes mention nothing of stress related to the gun club. Barr said that the first time his notes indicated that she complained of stress caused by the gun club was in a visit to his office on March 9, 1993, four days after the Vermillions sued Pioneer. The circuit court had a sound basis for concluding that the Vermillions failed to make a case for intentional or negligent infliction of emotional distress.

The Vermillions next contend that the court erred in disallowing punitive damages. They argue that they showed that Pioneer intentionally continued the nuisance after it knew or should have known of the unreasonable risk and danger to the Vermillions.

■ To recover punitive damages in a nuisance action, a plaintiff must show that the defendant knowingly and willfully maintained the nuisance. *Maryland Heights Leasing v. Mallinckrodt,* 706 S.W.2d 218, 222 (Mo.App.1985). Whether evidence is sufficient to warrant punitive damages is a question of law within the discretion of the trial court. *Gilbert v. K.T.I., Inc.,* 765 S.W.2d 289, 298 (1988). Punitive damages are recoverable for actual or legal malice. *Id.* Malice is "the doing of a wrongful act intentionally without just cause or excuse." *Ruppel v. Ralston Purina Co.,* 423 S.W.2d 752 (Mo. 1968). "[T]o justify punitive damages, there must be some element of wantonness or bad motive." *Gilbert,* 765 S.W.2d at 298.

■ The Vermillions claim that punitive damages should have been awarded because Pioneer failed to investigate or take appropriate precautionary measures after being notified of the ricochets and trespassing bullets. In support of this assertion, they cite several cases for the proposition that punitive damages may be awarded where the evidence shows that the defendant continued the nuisance despite a plaintiff's protests. We do not disagree with this assertion, but the record indicates that Pioneer did, initially, respond to the Vermillions' complaints.

Pioneer's former president, Leon Cross, testified that Pioneer was unaware of a problem until the Vermillions notified the club on April 21, 1991, that one of its bullets had lodged in a wall of the Vermillions' house. After the incident, Pioneer constructed an oak baffle over the berm. The baffle was left up for approximately one to two years during which time it was periodically inspected. Although after a year or so, bullets or ricochets continued to stray onto the Vermillions' property occasionally, the Vermillions did not allege that Pioneer acted maliciously or with bad motive, nor was this established by the evidence. Based on this record, we are unable to conclude that the circuit court abused its discretion in denying the Vermillions' claim for punitive damages.

■ The Vermillions next argue that the circuit court erred in concluding that the release they signed with Pioneer constituted a release of all claims against the gun club arising before April 21, 1991.

The release said:

First Party [the Vermillions], for and in consideration of the sum of Five Hundred Dollars and no/100 Dollars ($500.00) to me/us in hand paid by Pioneer Gun Club & General Accident Ins., Second Party, the receipt of which is hereby acknowledged, I/we being of lawful age ... hereby remise, release, acquit and forever discharge the said Second Party, his/her, their, and each of their associations, heirs, executors, administrators, successors, and assignees and any and all other persons, partnerships ... whether herein named or referred to or not, of any from any and every claim, demand, right, or cause of action of whatever kind and nature, either in law or equity, especially the liability arising from an accident to property of Vermillion's which occurred on or about the 21 day of April, 1991, at or near the following location: County Rd 6001 S. Heir Rd. Bates City, Mo., for which I/we have claimed the

said Second party to be legally liable, but this Release shall not be construed as an admission of liability.

It is agreed that this Release shall apply to all known injuries and damages, as well as those unknown and unanticipated, resulting from said accident, casualty or event.

It is further acknowledged that there is no agreement or promise on the part of the said Second Party to do or omit to do any act or thing not herein mentioned and that the above consideration is in full settlement of any and all damages and liability arising from or out of any and all matters aforementioned.

Furthermore, in consideration of the foregoing premises and the sum of One Dollar ($1.00) to him (her) in hand paid by Second Party, the receipt whereof is hereby acknowledged, First Party does hereby expressly stipulate and agree to indemnify and hold forever harmless the Second Party against any claim or claims, action or actions, cause of action or causes of action, damages and demand or demands which may hereafter at any time be made, asserted, brought or instituted against the Second Party by him (her) or the said infant or by his (her) guardian or legal representative or anyone on his (her) behalf because of, or in any manner arisen, arising, or to grow out of the accident hereinbefore described.

■ When a release contains both general and specific language, as this release does, the courts should presume the general language to have been used in subordination to the specific language. *Williams v. Riley*, 243 S.W.2d 122, 124 (Mo.1951). The release never referred to any incident other than the one occurring on April 21, 1991. The second paragraph referred to all injuries resulting from "said accident." The third paragraph said that it was full settlement of all liability arising out of "all matters aforementioned." The only "aforementioned" matter was the incident of April 21, 1991. In the fourth paragraph, the Vermillions agreed to hold Pioneer and its insurer harmless for any liability arising out of "the accident hereinbe-

fore described." The only accident previously described was the one on April 21, 1991.

The circuit court erred in concluding that the release was effective as to all claims which may have arisen before April 21, 1991. The Vermillions, however, had an opportunity to present evidence of prior incidents. At trial, they testified that bullets or ricochets had passed over or onto their property three times before April 1991. To the extent that they proved any injuries or damages resulting from these incidents, the circuit court shall consider these claims on remand.

■ The Vermillions next argue that the circuit court erred in sustaining Pioneer's motion *in limine* to exclude any reference to a report by Pioneer's consultant Bud Eyman and in sustaining Pioneer's motion to prohibit them from taking Eyman's deposition. We do not review this issue.

■ A pretrial ruling on a motion *in limine* is interlocutory and is not appealable. *Jordan v. Abernathy*, 845 S.W.2d 86, 88 (Mo. App.1993). To preserve an exclusion of evidence issue for appellate review, an offer of proof must be made at trial to show why the evidence is relevant and admissible. *Eckert v. Thole*, 857 S.W.2d 543, 546 (Mo.App.1993).

The Vermillions made no attempt at trial to present any evidence concerning Eyman or his reports. Without an offer of proof on the record, we have nothing to review. This also renders moot the Vermillions' claim that the court erred in preventing them from taking Eyman's deposition.

■ Finally, the Vermillions contend that the circuit court erred in excluding Nolan Vermillion's testimony that a Pioneer member, Ray Snarr, had said that he believed Pioneer bullets had ricocheted onto the Vermillions' property. They claim the statements should have been admitted as an exception to the hearsay rule because Snarr was Pioneer's agent and the statements constituted admissions against Pioneer's interest. We disagree.

The Vermillions did not lay a proper foundation establishing that Snarr was acting within the scope of an agency relationship with Pioneer, assuming there was one, when

he made the statements. The evidence established only that he was a Pioneer member. This was not sufficient for admission of the statements.

We reverse that portion of the circuit court's judgment finding that the nuisance was permanent. We remand the circuit court's award of damages with instructions that it reconsider its award of damages. We also instruct the circuit court to reconsider its ruling on the negligence claim. We also reverse that portion of the circuit court's judgment concluding that the Vermillions' release constituted a release of all claims prior to April 21, 1991, and remand for further proceedings. In all other respects, we affirm the circuit court's judgment.

All concur.