Robert McCOMBS, et al., Appellants,

v.

JOPLIN 66 FAIRGROUNDS, INC., d/b/a
Joplin 66 Speedway, Respondent.

No. 20094.

Missouri Court of Appeals,
Southern District,
Division One.

June 24, 1996.

Bruce N. Secrist, Joplin, for appellants.

Ron E. Mitchell, John Mollenkamp of Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, for respondent.

MONTGOMERY, Presiding Judge.

Plaintiffs filed suit against Defendant for abatement of a nuisance. According to Plaintiffs' First Amended Petition, the noise, dust, dirt, fumes, and light from Defendant's three-eighths mile clay/dirt automobile racetrack penetrates their property and homes. Plaintiffs alleged that Defendant's operation of the racetrack is a nuisance and eliminates their right to peaceful enjoyment of their property. Plaintiffs prayed for a permanent injunction restraining Defendant from operating a racetrack on its premises. Following a bench trial, the trial court found that Defendant's operation of the racetrack significantly affected Plaintiffs' enjoyment of their property. Nevertheless, the trial court permitted Defendants to continue in operation but with certain restrictions. The amended judgment recites that "[a]bsent compliance [with] these restrictions, the Defendants are hereby permanently enjoined and restrained from operation of an automobile race track/speedway ...." The five restrictions deal with reducing noise, dust, the number of yearly races, and the ending time and the length of each race program. Plaintiffs appeal.[1]

1. Defendant filed a motion to dismiss Plaintiffs'     appeal after Plaintiffs filed a motion in the trial

Plaintiffs contend on appeal the trial court erred in (1) amending the original judgment based on Defendant's untimely after-trial motion, (2) granting a limited injunction instead of a complete injunction, and (3) finding, without substantial evidence, that the federal highway standard of 67 dBA applied to the determination of appropriate relief by restricting Defendant from conducting activities which exceed 67 dBA.

Defendant's racetrack was constructed on a 100–acre tract outside the city limits of Joplin, Missouri. No zoning regulations apply to this tract. The property surrounding the racetrack is used for residential, commercial, and light manufacturing purposes. North and east of the racetrack the property use is commercial and industrial, while on the south and west the property use is primarily residential.

The area in which the twenty-eight Plaintiffs live (a two-mile radius of the racetrack) contains 2762 residents. Forty-six residences are located within a one-half mile radius of the racetrack, while 301 residences are found within a one-mile radius.

At trial both sides offered expert testimony regarding measurement and analysis of sound. Plaintiffs' expert witness, Dr. William Gatley, explained that sound is measured in decibels (dB) and also in A-weighted decibels (dBA). Decibel measurements are logarithmic. For example, a sound of 60 dBA is only half as loud as a sound of 70 dBA. In addition, sound measured over time is called an Leq. Other sound-related measurements are L10 (a description of the level that is exceeded only 10 percent of the time) and Ldn (a 24–hour Leq with a correction of 10 dBA for nighttime hours).

The expert witnesses for both sides measured various sound levels emanating from the racetrack at different locations. Dr. Gatley agreed that no universally accepted criteria exists for the variability in the subjective response of people to noise. However, numerous federal agencies have set guidelines and limits for sound levels. One such agency, the Federal Highway Administration, suggests that 67 dBA is compatible with churches, libraries, parks, and hospitals. During a racing session, Dr. Gatley measured the sound level in Plaintiff McCombs' yard at 73 dBA. Inside the home of Plaintiff McCombs, with the window open and the television on, the nonrace level was 54 dBA and the race level was 58 dBA.

Dr. Gatley agreed that the following sound levels are emitted from certain familiar machines such as a washing machine (above 70 dBA), a food blender (80 dBA), a power lawn mower (95 dBA), and a motorcycle (110 dBA under maximum acceleration). Evidence was also admitted on the sound levels experienced by drivers of various automobiles cruising at 70 miles per hour, e.g., Lexus SC300 (67 dBA); Chevrolet Impala SS (72 dBA); and Chrysler LHS (71 dBA).

The trial court also heard lay testimony from some of the Plaintiffs and from others living near the racetrack or attending the races. As might be expected, these witnesses gave differing views on the amount of noise created by the races.

■ In our review of a court-tried case the judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Lee v. Rolla Speedway, Inc.*, 668 S.W.2d 200, 205 (Mo.App.1984). In determining whether the evidence is sufficient to support the judgment, we accept as true the evidence, with permissible inferences therefrom, favorable to the prevailing party and disregard contradictory testimony. *Id.*

court to enforce the judgment being appealed. The trial court found that Defendant violated the time limit restriction. Defendant was ordered to suspend racing for one week and pay Plaintiffs' attorney fees of $652.50. We deny this motion based on the exception to the acceptance of benefits rule found in *Frazier v. Emerson Elec. Co.*, 867 S.W.2d 700, 701 (Mo.App.1993). Even though Plaintiffs sought and received enforce-

ment of the judgment they appealed, the benefit of the judgment which Plaintiffs accepted could not possibly be affected by the action of this Court. Plaintiffs contend here that a total injunction should have been entered rather than a limited one. Thus, it is only possible for Plaintiffs to obtain a more favorable judgment without the risk of a less favorable judgment.

■ Plaintiffs' first point claims the trial court erred in amending the original judgment in response to Defendant's untimely after-trial motion. We agree.

The trial court entered judgment on December 12, 1994. On January 11, 1995, thirty days following entry of judgment, Plaintiffs filed a "Motion to Amend Judgement," asking the court to completely enjoin the racetrack's operation rather than restricting its operation. Alternatively, the motion requested more severe restrictions than those imposed by the original judgment.

On January 12, 1995, thirty-one days following entry of the judgment, Defendant filed a "Motion for New Trial, Motion to Reconsider and Amend Judgment," requesting the court to amend the judgment as follows:

1. To change the cut-off time from 11:00 P.M. to 12:00 P.M.

2. To allow the cut-off time to be 12:00 P.M. on nights before national holidays.

3. To order costs to be paid by plaintiffs.

4. To eliminate the five hour maximum for races.

A hearing was held on both motions. On February 15, 1995, the trial court amended its judgment in a manner which granted some of the relief requested by each party.[2]

The only relief requested by Defendant's motion and granted in the amended judgment pertained to court costs. The original judgment taxed the costs against Defendant, but the amended judgment only taxed filing fee costs against Defendant. Clearly, the trial court granted partial relief to Defendant based on its after-trial motion.

■ A trial court retains control over a final judgment for thirty days after entry and during that time period may vacate, correct, amend, or modify its judgment. Rule 75.01.[3] However, upon the filing of a timely after-trial motion, the time period within which the court may exercise jurisdiction over the judgment extends to ninety days. Rule 81.05; *In Interest of C.J.E.,* 878 S.W.2d 845, 848 (Mo.App.1994). "Once the thirty day period in Rule 75.01 expires, a trial court's authority to grant relief is constrained by and limited to the grounds raised in a timely filed, authorized after-trial motion." *Massman Constr. Co. v. Highway & Transp. Comm'n,* 914 S.W.2d 801, 802 (Mo. banc 1996).

Therefore, under Rule 75.01 the trial court lost jurisdiction of this case thirty days after its December 12, 1994, judgment, except for matters raised by Plaintiffs' motion to amend the judgment. *See Antonacci v. Antonacci,* 892 S.W.2d 365, 368 (Mo.App.1995).

In *Antonacci,* the appellate court upheld father's contention that the trial court had no jurisdiction to award mother attorney fees in its final judgment of January 19, 1994, after the original judgment of November 23, 1993, failed to award her any attorney fees. Only father had filed a timely motion to amend the judgment or for a new trial. His motion made no reference to attorney fees. Father's motion was overruled, but the trial court amended the judgment by awarding mother attorney fees. The appellate court held that "the portion of the January 19, 1994 judgment regarding attorney's fees exceeded the court's jurisdiction and is void." *Id.* at 368.

In the instant case, Plaintiffs' after-trial motion made no mention of court costs. Defendant's after-trial motion was not timely filed under Rule 75.01. Consequently, the trial court only had authority to grant relief in response to the grounds raised in

---

2. The amended judgment reflects that the trial court changed some of its previous findings of fact and conclusions of law. Plaintiffs quarrel with these changes. We do not address Plaintiffs' concerns because "[a] finding of fact precedes judgment, and constitutes an opinion for the ground of judgment [Rule 73.01], but is not a final determination of the rights of the litigants in the subject matter of the action. Only a judgment is that. Rule 74.01. A finding of fact does not even affect the validity of judgment so that, if erroneously found, does not prevail against the judgment. The efficacy of judgment, therefore, does not reside in any prefatory statement of reason or recital but in the mandate of the decree." *Wilhoit v. Wilhoit,* 599 S.W.2d 74, 78 (Mo.App.1980) (citations omitted).

3. Rule references are to Missouri Rules of Court (1995), unless otherwise indicated.

Plaintiffs' motion. Based on *Antonacci*, the portion of the February 15, 1995, judgment regarding court costs exceeded the court's jurisdiction and is void. That portion of the judgment must be reversed.[4]

■ In Point II Plaintiffs claim the trial court erroneously failed to grant a complete injunction after finding that Plaintiffs' enjoyment of their property was significantly affected by Defendant's operation of the racetrack. Plaintiffs assert that no evidence indicated restrictions on the racetrack's operation would abate the nuisance.

Plaintiffs appear to rest their complaints only on the noise levels created by the racetrack. They say that "[t]he question litigated at this trial was whether the race track was too loud so as to be a nuisance to neighboring property owners and if it was too loud, whether or not the benefits it affords outweigh the interference with Plaintiffs' use of their property." Accordingly, in resolving this point, we view the trial court's judgment only in light of the noise restrictions.

■ Plaintiffs carried the burden of proving that Defendant's use of its property created a nuisance. "A private nuisance is the unreasonable, unusual, or unnatural use of one's property which substantially impairs the right of another to enjoy his property." *44 Plaza Inc. v. Gray–Pac Land Co.*, 845 S.W.2d 576, 578 (Mo.App.1992).

However, the law does not concern itself with trifles, and there is liability for nuisance only to those whom it causes significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose. By significant harm is meant harm of importance, involving more than slight inconvenience or petty annoyance, determined by the standard of normal persons or property in the particular locality. If normal persons living in the community would regard the invasion as

definitely offensive, seriously annoying or intolerable, it is significant. If normal persons in the locality would not be substantially annoyed or disturbed, the invasion is not significant, even though the idiosyncracies [sic] of the particular plaintiff may make it unendurable to him.

*Sofka v. Thal*, 662 S.W.2d 502, 508 (Mo. banc 1983) (citations omitted).

■ Upon a determination of "significant harm" however, the inquiry does not end. "[I]nterference with the use and enjoyment of [plaintiffs'] property is not the only question to be decided in determining whether or not plaintiffs are entitled to relief. That determination requires the weighing of the 'utility of the actor's conduct' against 'the gravity of the harm.'" *Lee v. Rolla Speedway, Inc.*, 494 S.W.2d 349, 355 (Mo.1973) (citing 4 Rest. of Torts, § 826, p. 241).

Here the trial court recognized this two-step process by concluding:

Since plaintiffs' enjoyment of their property is being significantly affected, the Court will exercise its equitable powers in an effort to arrive at a fair and equitable solution by requiring the use of mufflers on all race cars and restricting the hours of racing.

As to the utility of the racetrack's operation, the trial court found:

The utility of the race track consists of recreation for thousands of fans, participation by numerous drivers, owners and sponsors, related businesses and jobs revolving around race track activity. Money spent at this track might otherwise be spent at tracks in other Missouri cities like Monett or Nevada or outside Missouri in Oklahoma or Arkansas. The direct and indirect revenue of the community is significant. The track cost over two million dollars.

Finally, in an attempt to "arrive at a fair and equitable solution," the trial court's findings noted that the "federal highway stan-

---

4. In the argument section of their brief, Plaintiffs complain that the trial court amended its judgment in response to Defendant's oral request at the hearing on the after-trial motions. Plaintiffs refer us to two transcript pages where Defendant's counsel allegedly made such oral request. The cited portion of the transcript fails to show an express motion to amend the judgment upon which the court acted. Furthermore, this issue does not appear in Plaintiffs' points relied on. "An appellate court is obliged to determine only those questions stated in the points relied on. Issues raised only in the argument portion of the brief are not preserved for review." *Boatmen's Bank v. Foster*, 878 S.W.2d 506, 509 n. 4 (Mo. App.1994).

dard for noise level is 67 dBA" and found that standard to be "somewhat analogous" to the area in question. Importantly, the trial court found that the 67 dBA standard was exceeded at the home of only one Plaintiff. In the yard of Plaintiff McCombs, Dr. Gatley measured the noise level at 73 dBA.[5] He agreed that with the addition of court-ordered race car mufflers, the noise level would be reduced to 63 dBA. Compared to the sound emitted by a Lexus at cruising speed (67 dBA) or by a washing machine (above 70 dBA), 63 dBA is much quieter and should not substantially impair Plaintiffs' peaceful enjoyment of their property.

Based on this evidence and findings by the court, we believe the court-ordered noise restrictions properly balance the utility of the racetrack's operation against the gravity of Plaintiffs' harm, especially with the "normal person" standard in mind.

We reach this conclusion based on *Racine v. Glendale Shooting Club, Inc.,* 755 S.W.2d 369 (Mo.App.1988), and *Massey v. Long,* 608 S.W.2d 547 (Mo.App.1980), where, in each case, a nuisance from noise was found and restrictions were imposed to control the noise. In *Massey,* plaintiffs' home was adjacent to defendants' six apartment air-conditioning units. The trial court found the operation of the air-conditioning units was a nuisance and enjoined defendants from operating the air-conditioning units between the hours of 10 p.m. to 7 a.m. The appellate court decided that substantial proof supported the injunction and said:

> The trial court, rather than enjoining all use of the air conditioning units, sought, and this court believes achieved, a proper balancing of the equities between the parties. Enjoining [defendants'] use of the air conditioning units during certain fixed nighttime hours cannot be said to have subjected them (or their tenants) to a degree of discomfort unconscionably disproportionate to the disruptive annoyance experienced by the [plaintiffs] from the noise emitted by the air conditioning units.

608 S.W.2d at 550.

In *Racine,* plaintiffs were adjoining landowners to the defendant's gun club. The trial court entered a limited injunction in plaintiffs' favor restricting the discharge of large caliber, high-powered firearms except under certain limited conditions such as the times of firing, the number of shooting matches, and the number of participants. On appeal the court noted that "[n]oise is not a nuisance per se but may be of such a character or so excessive as to become one, even though it arises from the operation of a lawful business." 755 S.W.2d at 372. In upholding the limited rather than a complete injunction, the court said, "The trial court's relief was an effort to restrict the club's activities to a level which did not constitute a substantial impairment of plaintiffs' peaceful enjoyment of their property." *Id.* at 373.

As in *Racine,* the trial court in this case restricted the racetrack's operation to a level which did not constitute a substantial impairment of Plaintiffs' peaceful enjoyment of their property. The restrictions are based on substantial evidence to that effect. Point II lacks merit.

■ Plaintiffs' remaining point reads as follows:

> The trial court erred in finding that the federal highway standard of 67 dBA was applicable to the court's determination of appropriate relief to abate the nuisance in that the court's limited injunction restricted Defendant from conducting any activities which resulted in a sound level exceeding 67 dBA despite the fact that there was no substantial evidence to support such a finding.

We first observe that the court's limited injunction does not restrict Defendant from conducting any activities which result in a sound level exceeding 67 dBA. The amended judgment restricts Defendant from "conducting any activities which result in an Leq which exceeds 100 dBA Leq at any distance of 100 feet from the center of the track."

The original judgment restricted Defendant from "conducting any activities which

---

5. From Plaintiffs' Exhibit 17, a diagram of the area in question, we observe that the residence of Plaintiff McCombs is over 1200 feet from the center of the racetrack.

result in an Leq which exceeds 67 dBA at any residences of Plaintiffs." After entry of the original judgment Plaintiffs' motion to amend the judgment alternatively suggested to the court that the Federal Highway Administration "standard of sixty-seven (67) Leq is not applicable to the present case ...." As discussed under Point I, the trial court had authority to amend the sound level restriction in the original judgment because Plaintiffs' motion requested relief from the 67 dBA restriction.

The amended judgment contains no restriction regarding a sound level of 67 dBA, yet Plaintiffs' point only complains about that restriction. On appeal, the trial court's judgment is presumed valid and the burden is on plaintiffs, as appellants, to demonstrate incorrectness of the judgment. *Humphrey v. Sisk,* 890 S.W.2d 18, 20 (Mo.App.1994). Plaintiffs make no effort to demonstrate any error in the amended judgment regarding sound levels of "100 dBA Leq at any distance of 100 feet from the center of the track." Point denied.

We reverse the portion of the February 15, 1995, judgment pertaining to court costs and remand the cause for entry of an order assessing costs against Defendant. In all other respects, the February 15, 1995, judgment is affirmed.

GARRISON and BARNEY, JJ., concur.