Charles Wayne TICHENOR, et al.,
Plaintiffs–Respondents,

v.

James L. VORE, et al., Defendants–
Appellants.

No. 21392.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 9, 1997.

Chris L. Weber, Monett, for Defendants–Appellants.

Dwight Douglas, Douglas & Douglas, Neosho, for Plaintiffs–Respondents.

BARNEY, Judge.

This action was brought by Charles Wayne Tichenor, Shirley Jean Tichenor, Donald Cooper, Judy Cooper, Charles Murphy, Daniel David Dunigan, Sr., Karen Ann Dunigan, R.E. White and Mosell White (Plaintiffs), five separate land owners in Barry County, Missouri. Plaintiffs sought to enjoin James L. Vore, Patricia M. Vore and Carl Vore (Defendants) from keeping and maintaining a large dog kennel on Defendants' property because Plaintiffs alleged that the noise from the barking dogs was a private nuisance which unreasonably interfered with Plaintiffs' use and enjoyment of their property. Following a court-tried case, the trial court permanently enjoined Defendants' "operating, maintaining or having a dog kennel or otherwise keeping or maintaining more than two dogs" on their property.

Defendants appeal, assigning one point of trial court error. Defendants maintain that the trial court's judgment was against the manifest weight of the evidence because the Defendants' dog kennel did not substantially interfere with the rights of Plaintiffs to use and enjoy their property. Specifically, Defendants aver that the trial court erred in

granting the permanent injunction because (1) the location of the property where the nuisance was alleged to exist is semi-rural in nature, (2) the dog kennel is well-constructed and is a considerable distance from Plaintiffs' homes, (3) the dogs barked only during daytime hours, and (4) because most of the Plaintiffs did not lose any sleep or develop health problems due to the barking dogs.

## I.

■ This being a court-tried case, this Court will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Gauzy Excav. & Grading Co. v. Kersten Homes, Inc.,* 934 S.W.2d 303, 304 (Mo. banc 1996). Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case. *Morgan v. City of Rolla,* 947 S.W.2d 837, 841 (Mo.App.1997). Weight of the evidence denotes its weight in probative value, not the quantity or amount of evidence. *Id.* It is not determined by mathematics; rather, it depends on its effect in inducing belief. *Id.* Appellate courts defer to the trial court's choice between conflicting evidence. *Warren v. Tom,* 946 S.W.2d 754, 757 (Mo.App.1997). This Court will also defer to the trial court on factual issues because it is in a better position to not only judge the credibility of witnesses directly, but also their sincerity and character as well as other trial intangibles which may not be completely revealed by the record. *In re Estate of Campbell,* 939 S.W.2d 558, 564 (Mo.App. 1997); *Dickinson v. Ronwin,* 935 S.W.2d 358, 362 (Mo.App.1996). The trial court may believe all, part or none of the testimony of any witnesses. *In re Campbell,* 939 S.W.2d at 564. In determining whether the evidence is sufficient to support the judgment, we accept as true the evidence, with permissible inferences therefrom, favorable to the prevailing party and disregard contradictory testimony. *McCombs v. Joplin 66 Fairgrounds, Inc.,* 925 S.W.2d 946, 948 (Mo.App.1996).

■ We note that the trial court's judgment does not contain specific findings of fact and conclusions of law. When, as here, specific findings of fact and conclusions of law were not requested and none were entered, this Court will affirm the trial court's judgment if it is supported under any legal theory. *Lawson v. Traders Ins.,* 946 S.W.2d 298, 300 (Mo.App.1997); *see also Gibson v. Adams,* 946 S.W.2d 796, 800–01 (Mo.App. 1997). We examine both the evidence and trial court's judgment with these precepts in mind.

## II.

Defendants' parcel of land, purchased in February 1995, is located approximately three-quarters of a mile north of Wheaton, Barry County, Missouri, near Missouri Highway 86.[1] According to Defendants' investigator-witness, Kenneth Herrington, the dog kennel is located 40 yards from the highway. Defendant Carl Vore was the only person residing on the property, some 150 feet from the dog kennel. However, at trial he testified that he had "been in and out of the hospital the last six months."

Each of the Plaintiffs lives near Defendants' dog kennel. Although an aerial photograph of the general area and an assessor's survey map were introduced into evidence, without additional interpretation these exhibits do not precisely set out the respective distances from each of the Plaintiffs' homes to Defendants' dog kennel.

---

1. The record shows that all but one of the Plaintiffs purchased and recorded their deeds to their respective properties prior to Defendants' purchase and recording of Defendants' deed to their property. Plaintiffs Tichenors began constructing their home in 1995, prior to Defendants constructing their dog kennel.

Although the issue of "prior occupation" was not expressly raised in Defendants' point relied on, we note that "[w]hile the weight of authority is that priority of occupation is not a defense as to one maintaining a nuisance, some courts have expressed the view that it is a factor to be considered in determining the character of the locality." *Clinic & Hosp., Inc. v. McConnell,* 241 Mo.App. 223, 236 S.W.2d 384, 391 (1951)(disapproved on other grounds in *Frank v. Envir. Sanitation Mgt., Inc.,* 687 S.W.2d 876, 879–80 (Mo. banc 1985)); *see also* 58 Am.Jur.2d *Nuisances* § 108 (1989).

Defendants' investigator testified that Plaintiff Dunigan's residence was located "200 yards" from the dog kennel and that Plaintiff Coopers' residence was "a little bit further." He stated that Plaintiff Murphy's home was located "about the same [distance from the dog kennel] as Dunigan. I figured a hundred-and-fifty, two hundred yards is what I figured." Plaintiff Whites' residence was "probably a good three-hundred yards." He concluded by stating that "Defendants' witness [Patricia] Utters house was a 'bit closer' and that Defendants' witness, [Tina] Burn's [sic] home was probably a little bit closer than the rest of them except for Mr. Tichenor's."

Additionally, the area was referred to by the parties as being "semi-rural" with several homes, including Plaintiffs, in relative close proximity to each other. Most Plaintiffs live approximately one mile north of Wheaton, Missouri.

In June 1995, Defendants constructed a dog kennel to house their Australian Shepard show dogs. The kennel is an insulated building, constructed of cinder block and a wood shingle roof. The kennel contains sixteen pens/runs. No dogs were sold from the kennel.

Generally, Defendants would maintain sixteen Australian Shepard dogs, more or less, in the kennel. The dogs remained in the indoor/outdoor portion of the kennel during daytime hours. Defendants would move the dogs inside the kennel usually between 6:00 p.m. and 9:00 p.m.

There was detailed testimony from each of the five Plaintiffs regarding the noise generated by Defendants' barking dogs. Each of the Plaintiffs testified that Defendants' dogs barked in a fairly constant and annoying manner.

Plaintiffs Tichenors testified that Defendants' barking dogs were a constant source of aggravation. The Plaintiffs Tichenors noted that Defendants' dogs would bark as much as twenty hours per day, with "[n]ot a breath between barks." They both testified that they would often lose sleep from hearing the dogs barking. Plaintiff Charles Tichenor testified that Defendants' dogs would "[b]e barking hard enough, constant enough, you can't go back to sleep . . . you lay there and listen to them dogs." Plaintiff Charles Tichenor also testified that when the dogs were inside the kennel at night, barking, that the kennel structure created a "megaphone effect" and that he was forced to wear ear plugs when he slept at night. Plaintiff Charles Tichenor further testified that "I've been a royal grouch total for the last year . . . [t]he dogs has finally just got me—my nerves shook. There ain't no place to get away from it." He testified that they would often leave their residence and travel to "Cassville, Monett, Joplin, anywhere to just get away . . . for a few hours and let the dogs just go crazy . . . ."

The Plaintiffs Tichenors also testified that they were often unable to perform yard work, plant flowers, work in the garage or enjoy their back porch because of the constant "roar" of dog barking.

As additional evidence of the nuisance created by Defendants' barking dogs, Plaintiffs Tichenors presented a videotape and audiotape at trial, both of which recorded the level of noise generated by the dog barking. Also admitted in evidence was a diary maintained by Plaintiff Shirley Jean Tichenor that recorded their daily aggravation from hearing the dogs barking for some thirteen consecutive months. This diary was a detailed, fifty page, type-written document that chronicled when the Plaintiffs Tichenors were awakened by the dogs, when the dogs would stop barking and when they would resume barking.

Plaintiff Donald Cooper testified that the dog barking is "annoying—nerve racking." He further testified that often he and his wife would go outside of their home, "but sometime[s] we get tired of it and go in the house." Plaintiff Donald Cooper testified that he heard the dogs barking every day and agreed that the noise makes him physically upset.

Plaintiff Charles Murphy testified that sometimes he would go outside and you "don't hear them, but most of the time you do." He testified that even in his house he could easily hear the dogs barking. He testified that Defendants' barking dogs have had

an adverse effect on his sleeping and his nerves.

Plaintiff Robert White testified that from where he lives he could easily hear the dogs barking. He testified that occasionally the barking dogs have been particularly annoying, in one instance disturbing his family reunion.

Plaintiff Daniel Dunigan testified that he and his wife often worked in their yard and that they could hear the dogs barking on and off all day long. He testified that "after two or three hours ... you get annoyed with them."

On the other hand, Defendant Carl Vore denied that his dogs barked at night "to such a point that [he] had to go out—inside the kennel." Additionally, a neighbor, Tina Burns, testified that she had never been wakened by the dogs barking and had never had a problem entertaining guests or staying outside and enjoying the use of her property. Likewise, Patricia Utter testified that although she heard the dogs barking, it was not loud and would not bother her daily routine; neither was her sleep disturbed by the barking from the dog kennel. Mr. Douglas Hughes, a pet distributor/broker, who lived about three-fourths of a mile from the dog kennel, testified that he occasionally heard barking in the mornings but not on a regular basis. He acknowledged, however, that the "dogs [were] going to be louder on the Tichenor property than on [his] property" because of the closer location of the Tichenor property to the dog kennel. Lastly, Defendants presented the testimony of Kenneth Herrington. Mr. Herrington was hired by Defendants to check "for the noise in and around the kennel." He generally testified about going to the homes of the Plaintiffs to ascertain if he could hear dogs barking from these locations. He heard none.

The trial court granted a permanent injunction against Defendants and ordered Defendants to cease operation of their dog kennel. The judgment allowed Defendants to maintain no more than two dogs on their property.

### III.

■ An action for "private nuisance" rests on tort liability. *Vermillion v. Pioneer Gun Club*, 918 S.W.2d 827, 831 (Mo.App. 1996). A private nuisance is the unreasonable, unusual or unnatural use of one's property which substantially impairs the right of another to peacefully enjoy his property. *Frank v. Envir. Sanitation Mgt., Inc.*, 687 S.W.2d 876, 880 (Mo. banc 1985); *McCombs*, 925 S.W.2d at 950. The focus is on a defendant's unreasonable interference with the use and enjoyment of a plaintiff's land. *Frank*, 687 S.W.2d at 880.

■ The law of nuisance recognizes two conflicting rights: (1) property owners have a right to control their land and use it to benefit their best interests; and (2) the public and neighboring land owners have a right to prevent unreasonable use that substantially impairs the peaceful use and enjoyment of other land. *Id.* The *unreasonable use* element of nuisance balances the rights of adjoining property owners. *Id.* The crux, then, of a nuisance case is unreasonable land use. *Id.*

■ The easiest way to show a nuisance is to prove that a defendant's land use is unreasonable as a matter of law, "a nuisance per se." [2] *Id.* However, "the keeping of a dog or dogs *is not* nuisance per se since the dog is traditionally deemed to be one of the beasts friendliest to man...." [3] *City of Fredericktown v. Osborn*, 429 S.W.2d 17, 23

**2.** Generally, maliciously designing to harm a neighbor, acts forbidden by statute, and activities openly carried on that a court considers flagrantly against accepted moral standards are considered a nuisance per se. ROGER A. CUNNINGHAM, ET AL., THE LAW OF PROPERTY § 7.2, at 414–15 (1984).

**3.** "Noise is not a nuisance per se but may be of such a character or so excessive as to become one, even though it arises from operation of a lawful business." *Racine v. Glendale Shooting Club, Inc.*, 755 S.W.2d 369, 372 (Mo.App.1988). The following factors are relevant in determining whether a particular noise has risen to the level of a nuisance: (1) locality, (2) character of the neighborhood, (3) nature of use, (4) extent and frequency of injury, and (5) the effect upon enjoyment of life, health, and property of those affected. *Id.*

(Mo.App.1968)(emphasis added). Therefore, where the particular nuisance may not be considered a nuisance per se, the following is to be observed:

> There is no exact rule or formula by which the existence of a nuisance or the nonexistence of a nuisance may be determined. 'Necessarily each case must stand upon its own special circumstances, and no definite rule can be given that is applicable in all cases, but when an appreciable interference with the ordinary enjoyment of property, physically, is clearly made out as the result of a nuisance, a court of equity will never refuse to interfere.'

*Frank*, 687 S.W.2d at 881 (citation omitted).

 Further, as noted above, for a private nuisance to exist, the alleged harm to a land owner must be substantial. *See id.* at 880. In determining whether harm is substantial, we recognize that "the law does not concern itself with trifles...."

*McCombs*, 925 S.W.2d at 950.

> By significant harm is meant harm of importance, involving more than slight inconvenience or petty annoyance, determined by the standard of normal persons or property in the particular locality. If normal persons living in the community would regard the invasion as definitely oppressive, seriously annoying or intolerable, it is significant. If normal persons in the locality would not be substantially annoyed or disturbed, the invasion is not significant, even though the idiosyncracies [sic] of the particular plaintiff may make it unendurable to him.

*Id.*(citation omitted).

 Finally, we note that trial courts have the authority to issue an injunction enjoining the use of property if such use constitutes a nuisance injuring another or his property. *Osborn*, 429 S.W.2d at 22. Never-

theless, "[a]n injunction is an extraordinary and harsh remedy and should not be employed where there is an adequate remedy at law." *Farm Bureau Town & Country Ins. Co. of Missouri v. Angoff*, 909 S.W.2d 348, 354 (Mo. banc 1995).

 Here, Defendants maintain that viewing the totality of the evidence adduced at trial, the annoyance caused to the Plaintiffs by Defendants' barking dogs was not substantial enough to conclude that the use and enjoyment of Plaintiffs' property was significantly impaired so as to warrant the issuance of a permanent injunction. Further, Defendants aver that they rebutted Plaintiffs' evidence and testimony, as outlined above, by presenting testimony from other neighbors in the surrounding area that they were not exasperated by Defendants' dogs.

 However, "[a]lthough there is no exact rule or formula for ascertaining when barking dogs rise to the level of a nuisance, relief will be granted where plaintiffs show they are substantially and unreasonably disturbed notwithstanding proof that others living in the vicinity are not annoyed." *Rae v. Flynn*, 690 So.2d 1341, 1343 (Fla.App.1997).[4] Further, appellate courts defer to trial courts on the choice between conflicting evidence. *Warren*, 946 S.W.2d at 757.

 We note that in *Rae*, the court stated that "in these types of cases even meager or uncorroborated evidence will support the [trial court's] findings if the evidence is of record and properly before the court." *Rae*, 690 So.2d at 1343.

We conclude, given the nature of the Plaintiffs' neighborhood, the Defendants' maintenance of a dog kennel to house at least sixteen dogs that periodically but consistently barked day and night, thereby disturbing the peace and tranquility of Plaintiffs, consti-

---

**4.** The court in *Rae* noted the following:

That mere noise may be so great at certain times and under certain circumstances as to amount to an actionable nuisance and entitle the party subjected to it to the preventative · remedy of the court of equity is thoroughly established. The reason why a certain amount of noise is or may be a nuisance is that it is not only disagreeable but it also wears upon the

nervous system and produces that feeling which we call 'tired.' That the subjection of a human being to a continued hearing of loud noises tends to shorten life, I think, is beyond all doubt. Another reason is that mankind needs both rest and sleep, and noise tends to prevent both.

*Rae v. Flynn*, 690 So.2d 1341, 1342 n. 1 (Fla. App.1997).

tuted an unreasonable interference with Plaintiffs' use and enjoyment of their property. *See Frank*, 687 S.W.2d at 880. Further, the testimony and evidence adduced during the trial, particularly from the Plaintiffs Tichenors, established that the Plaintiffs' peaceful enjoyment of their property was significantly impaired by the Defendants' barking dogs and that Plaintiffs' complaints did not stem from "petty annoyances." *See McCombs*, 925 S.W.2d at 950; *Osborn*, 429 S.W.2d at 23.

The trial court's judgment issuing a permanent injunction was supported by substantial evidence.

The judgment is affirmed.

MONTGOMERY, C.J., and SHRUM, J., concur.