### In re the ESTATE OF Mary F. CAMPBELL, Deceased.

**BOATMEN'S BANK OF SOUTHERN MISSOURI, Personal Representative of the Estate of Mary F. Campbell, Respondent,**

v.

**Trula A. WALKER, Respondent,**

and

**Mary Patricia Soukup, Appellant,**

and

**Boatmen's Trust Company, Trustee of both the Mary F. Campbell Restated Revocable Trust dated November 9, 1990 and the Mary F. Campbell Irrevocable Trust dated September 28, 1992, Respondent.**

No. 20758.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 28, 1997.

Ben K. Upp, Michael J. Dearmon, Greene & Curtis, L.L.P., Springfield, for appellant.

Devon F. Sherwood, Sherwood, Honecker & Bender, Springfield, for respondent, Trula A. Walker.

GARRISON, Judge.

Mary Patricia Soukup (Appellant), daughter of Mary F. Campbell (Decedent), appeals from a judgment holding that Decedent made a gift of a promissory note to her other daughter, Trula Walker (Trula), before her death and that, as a result, the proceeds of the promissory note belonged to Trula and not to Decedent's estate. We affirm.

## FACTS

The promissory note in question, which was payable to Decedent, arose from the sale of a home which the parties refer to simply as "Pickwick" or the "Pickwick property." Trula and her husband, Randall, owned Pickwick for several years before conveying it to Decedent in consideration for Decedent paying their attorney's fees in another matter unrelated to this case. Following the conveyance, Trula and Randall moved out of Pickwick and resided with Decedent.

Decedent executed a beneficiary deed pursuant to which she would remain the owner of Pickwick until her death, at which time Pickwick would become the property of an irrevocable trust established by Decedent for the sole benefit of Trula. Pickwick, however, was sold to Danny Terry (Terry) in November, 1993.

Some time prior to November 24, 1993, Decedent, Trula, and Randall met with Jeannie Gaut, a real estate agent and Randall's niece, at RBX Transportation, Inc., Randall's place of business. At that time, Decedent, Trula and Randall reviewed the documents presented by Gaut in connection with closing the sale of Pickwick, including a deed prepared for Decedent's signature and a copy of the promissory note to be signed by Terry. According to testimony at trial, after Decedent signed the deed, she handed all of the documents to Trula, saying, "Here, these are yours." Terry, however, had not yet signed his portion of the documents, including the promissory note, and Gaut took them in order to obtain his signature.

After Terry signed the papers, he sent them to a post office box, paid for by Decedent, but which bore the names of both Decedent and Trula. Trula testified that when Decedent opened the envelope containing Terry's $185,500 promissory note, she handed it to Trula, saying again, "Here, this is yours." The next day, Trula said she showed the note to Randall, saying that Decedent had given it to her. Randall then took the note to his office at RBX where he kept a file on the Pickwick property.

In January, 1994 Terry mailed his first monthly payment on the promissory note,

payable to Decedent, to the same post office box where he had mailed the note. The payment was deposited in an account titled to Decedent and Trula as joint tenants with rights of survivorship (the joint account). There was no dispute about ownership of the January payment because it was deposited in the joint account prior to Decedent's death. *See In re Kaimann's Estate*, 360 Mo. 544, 229 S.W.2d 527, 529 (1950); *see also Melton v. Ensley*, 421 S.W.2d 44, 55 (Mo.App. S.D. 1967). The payments made by Terry after Decedent's death, as well as the ownership of the promissory note itself, are in dispute here.

Decedent died on February 2, 1994. Terry continued making the regularly scheduled note payments in February, March, April, and May, as well as a $5,000 principal payment in May, all of which totaled $9,936. All of these payments were payable to Decedent and were mailed to the same post office box. Each payment was deposited by Trula and/or Randall in the joint account.

Terry exercised his right under the note to prepay it in May, 1994. To facilitate that payment, Randall delivered the note to Boatmen's Bank.[1] On May 25, 1994, Terry prepaid the entire balance of the note, delivering the payment to Boatmen's, which retained those funds as Decedent's personal representative pending a determination of the ownership of the note and its proceeds. The Bank eventually determined that it could not resolve the issue itself, and on September 1, 1994, Boatmen's filed a petition to discover assets. The issue confronting the trial court was whether or not Decedent made an effective gift of the unendorsed promissory note to Trula prior to her death.

We note here that two trusts were established by Decedent, one for Appellant and one for Trula. Each trust is the residuary beneficiary of one-half of Decedent's estate. Therefore, if Decedent made a gift to Trula of the promissory note prior to her death, then Trula would own all the proceeds of the note. If, however, an effective gift was not made, half of the proceeds would go to the trust benefitting Trula and half would go to the trust benefitting Appellant.[2]

The trial was held on October 31 and November 1, 1995. On December 14, 1995, the trial court entered its judgment finding "that the promissory note ... was effectively transferred by Mary F. Campbell to Respondent Trula A. Walker during her lifetime and was given to Trula A. Walker as a gift." As a result, the proceeds of the promissory note, including the payments totaling $9,936 retained by Trula and Randall, were determined to be Trula's property and not an asset of Decedent's estate.

In her sole point relied on, Appellant contends that the trial court erred in holding that the promissory note was effectively transferred by Decedent to Trula as a gift and that all proceeds of the note are Trula's property. According to Appellant, the trial court's judgment was not supported by the evidence, was against the weight of the evidence, and was an erroneous application of the law in that the evidence failed to establish the necessary elements of a gift.

Since this was a court-tried case, our review is governed by Rule 73.01. The trial court's judgment must be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or

---

1. Boatmen's, the personal representative of Decedent's estate, had questioned whether the promissory note was an asset of the estate, or whether it had been effectively transferred prior to Decedent's death. Pursuant to the Bank's request, affidavits concerning that issue had been furnished from Trula, Jeannie Gaut, and Louise House (a long-time friend of Decedent's), but the issue had not been resolved when Terry prepaid the note.

2. We recognize that prior to the sale of Pickwick to Terry, it was owned by Decedent under a beneficiary deed which provided that upon Decedent's death, it would pass to the trust established for Trula as sole beneficiary. However, Pickwick was sold to Terry prior to Decedent's death.

judgment is wrong." *Id.* We give due regard to the trial court's determination of the credibility of witnesses. Rule 73.01(c)(2).

■ Neither party requested findings of fact or conclusions of law. "Such findings and conclusions are not required of the trial court unless requested and in cases where they are not requested, all fact issues are to be considered found in accordance with the result reached by the trial court." *McLain v. Johnson,* 885 S.W.2d 345, 347 (Mo.App. W.D.1994).

■ The essentials of an inter vivos gift of personal property are as follows: "a present intention to make a gift on the part of the donor, a delivery of the property by the donor to the donee, and an acceptance by the donee, whose ownership takes effect immediately and absolutely." *Wantuck v. United Savings & Loan Ass'n,* 461 S.W.2d 692, 694 (Mo. banc 1971); *see also In re Estate of Hoffman,* 490 S.W.2d 98, 103 (Mo.1973). "Generally, a person claiming a gift has the burden of proving the gift by clear and convincing evidence." *Kennedy v. Milligan,* 915 S.W.2d 784, 789 (Mo.App. W.D.1996). "Where the gift is not asserted until after the alleged donor's death, it is viewed with suspicion and it has been held the proof should leave no room for reasonable doubt." *Robertson v. Estate of Zimmerman,* 778 S.W.2d 805, 808 (Mo.App. E.D.1989).

### A. INTENT

■ According to Appellant, "the evidence failed to establish [Decedent's] present intent to make a gift of the promissory note to Trula A. Walker." In connection with this issue, we note that "[c]onduct is an enlightening ingredient in discerning intent." *In re Estate of Hoffman,* 490 S.W.2d at 103.

■ There was evidence indicating that Decedent intended for Trula to have Pickwick at her death. For instance, in July, 1992, Decedent signed a document acknowledging her intent that Trula was to receive that property, among others, when she died. Decedent also executed the beneficiary deed which provided that the property would belong to Trula upon her death. These examples in themselves, however, do not indicate

that Decedent intended to make a gift of the note or its proceeds prior to her death. We note that "[l]anguage written or spoken, expressing an intention to give, does not constitute a gift, unless the intention is executed by a complete and unconditional delivery of the subject matter, or delivery of a proper written instrument evidencing the gift." *In re Estate of Piper,* 676 S.W.2d 897, 899 (Mo. App. S.D.1984).

There was evidence, however, of a present intent by Decedent to give the note and its proceeds to Trula. Trula, Randall and Jeannie Gaut all testified that when Decedent signed the deed conveying Pickwick to Terry, she handed the copy of the note to Trula, saying that it was hers. According to Trula, Decedent did and said the same thing again when the signed note was received. Gaut also testified that Decedent asked Trula where she wanted the note payments to be sent, and that Trula directed that they be mailed to the post office box which contained both of their names.

Louise House, a friend of Decedent since 1934, also testified about a conversation she had with Decedent concerning Pickwick and the note. She testified:

Q: So after that time she—did [Decedent] talk to you on the phone about—about the Pickwick property?

A: Uh-huh.

Q: What did she say?

A: Well, she told me that they—that she gave [Trula] the note to make Pickwick all hers.

Q: And can you—

A: And she said [Appellant] will have the one in Colorado, what was—I don't know if it had been deeded to her yet or not. But I know that she was working on both of them.

Q: Now, you—I take it by that that you knew at that time that [Decedent] had sold the actual house and she took back a note from somebody on it.

A: Uh-huh.

Q: And was there any question in your mind that that's what she had referenced to when she said that to you?

A: No. That's it.

■ In the instant case, there was sufficient evidence, if believed by the trial court, to support a finding of a present intent to make a gift of the note.[3]

## B. DELIVERY

■ Trula admitted at trial that no one but Decedent and herself were present when Decedent allegedly handed the signed promissory note to her after retrieving it from her post office box and said, "Here, this is yours." "While no particular form is necessary to effect a delivery, and while the delivery may be actual, constructive, or symbolical, there must be some evidence to support a delivery theory." *In re Estate of Piper,* 676 S.W.2d at 899. Appellant argues the following in her brief:

Besides there being no written documentation of a gift to substantiate [Trula's] claim, the decedent nor [Trula] informed Terry, Boatmen's, or the decedent's estate planning attorneys of such a gift prior to the decedent's date of death. There was no evidence introduced at trial that decedent or [Trula] objected to the Note or its payments being made payable to the decedent, nor was there any evidence introduced that either one requested that the Note be retitled or reissued in [Trula's] name. Decedent did nothing consistent with a gift of the Note.

"Regarding an inter vivos gift, cases have recognized a family relationship exception which allows for a presumption of delivery between family members, especially those residing in the same household." *Nemeth v. Nemeth,* 765 S.W.2d 384, 385 (Mo.App. E.D. 1989). Regardless of whether or not we recognize such a presumption in this case, substantial evidence did exist, if believed by the trial court, that actual delivery of the note was made from Decedent to Trula.

■ "The test [for delivery] is whether the donor put it out of [her] power to repossess the property and relinquished dominion." *Firestone v. Yoffie,* 494 S.W.2d 394, 400 (Mo.App. E.D.1973). Trula and Randall both testified that the promissory note was taken to RBX after it was delivered to Trula. The payment received on the note prior to Decedent's death was deposited in the joint account, which Trula testified was her only checking account. There was no evidence introduced to show that Decedent exercised any control over these funds after they were received. According to Trula, Decedent never asked her about the promissory note again after handing it to her and saying it was hers (Trula's).

Appellant focuses on a distinct portion of Trula's testimony in arguing the lack of a valid gift:

Q: If Mr. Terry had paid the note off prior to your mother's date of death, would he have paid those proceeds to your mother?

A: Yes.

Q: He would not have paid them to you?

A: No.

Q: And then would it have been necessary for your mother, if she wanted to, to put those proceeds in your hands to take an additional step to transfer those proceeds to you, correct?

A: Right.

This was a hypothetical scenario which was merely consistent with the fact that the note was payable, on its face, to Decedent, and there was no evidence that Terry had been told of the gift, or had been given any other instructions about payment. Such an interpretation does not necessarily indicate that a gift of the note had not been consummated.

---

**3.** In support of the argument that the evidence did not demonstrate an intent by Decedent to make a gift of the note, Appellant argues that "the evidence at trial showed that the decedent did not endorse or negotiate the note to [Trula]...." "Failure to endorse the note is an evidential fact negativing the making of, or intent to make, a gift." 38A C.J.S. *Gifts* § 55 (1996). However, Appellant does not argue that endorse-ment of the promissory note was required to transfer ownership of the note. Missouri courts have held that endorsement is not necessary to consummate a gift of a negotiable instrument. *See Phillips v. Alford,* 90 S.W.2d 1060, 1069 (Mo.App. W.D.1936) (holding that endorsement is unnecessary to consummate a gift of a certificate of deposit).

If the trial court chose to believe the testimony of Trula and Randall, which it obviously did, there was substantial evidence to support a finding of delivery of the note in connection with the gift.

### C. ACCEPTANCE

Finally, Appellant contends that "[Trula] never exhibited any signs of ownership prior to the decedent's date of death" and that she therefore did not fulfill the third element of a gift, which is "an acceptance by the donee, whose ownership takes effect immediately and absolutely." *Wantuck v. United Savings & Loan Ass'n*, 461 S.W.2d at 694. Appellant points out the following in her brief:

> [Trula] never informed Terry of the gift nor did she ever direct him to make the payments to her, in fact, [Trula] testified at trial that she never talked to Terry. The fact that [Trula] never told Terry that she was the owner of the Note and that he should be making his payments to her is clear evidence against her contention of ownership.

There was evidence, however, that Trula exhibited signs of ownership since she assumed control over the note by having Randall take it to RBX. Likewise, Trula deposited the payments received, including the one before Decedent's death, into the only bank account she had, which was also titled with her mother. There was no evidence of Decedent exercising any ownership rights over the note after Trula says it was delivered to her with words indicating a gift was intended.

"The rule is that acceptance will be presumed when the gift is entirely beneficial to the donee unless the contrary appears." *Firestone v. Yoffie*, 494 S.W.2d at 400; *see also In re Estate of Hoffman*, 490 S.W.2d at 103. There was evidence in this case, if believed by the trial court, that after Decedent made a gift of the note, it was entirely beneficial to Trula.

Based on the evidence in this case, we are unable to conclude that the trial court erred in finding that the third element of a gift existed.

### CONCLUSION

"Whether a valid inter vivos gift was made is a question of fact." *Moseley v. Moseley*, 795 S.W.2d 464, 467 (Mo.App. E.D. 1990). This case hinged largely on the credibility of the witnesses. In particular, the gift theory depended on the credibility of Trula and the witnesses called by her. "[I]f that evidence was believed, there could remain little doubt of the gift; if not believed, a gift could hardly have been established." *In re Petersen's Estate*, 295 S.W.2d 144, 150 (Mo. 1956).

In court-tried cases considerable deference is given to judgments which turn on evidentiary and factual evaluations by the trial court. *In re Marriage of Fry*, 827 S.W.2d 772, 775–76 (Mo.App. S.D.1992). It is the function of the trial court to decide the weight and value to be given to the testimony of witnesses. *Bradley v. Bradley*, 880 S.W.2d 376, 379 (Mo.App. W.D.1994). As the trier of fact, the trial court is in a better position to determine the credibility of witnesses, their sincerity, character, and other trial intangibles which may not be shown by the record. *Vance v. Vance*, 852 S.W.2d 191, 192–93 (Mo.App. S.D.1993). It may believe all, part or none of the testimony of any witness. *In re Adoption of W.B.L.*, 681 S.W.2d 452, 455 (Mo. banc 1984).

Here, the trial court could, and apparently did, believe Trula's testimony and the evidence presented by her in finding that Decedent made a gift of the note and that its proceeds, including the payments made by Terry after Decedent's death, are the property of Trula.

The judgment is affirmed.

BARNEY, P.J., and PREWITT, J., concur.