In the ESTATE OF Mildred Fern THOMPSON, Deceased, Gary Mac White, Appellant,

v.

James Daniel HICKS, Respondent.

No. WD 62937.

Missouri Court of Appeals, Western District.

Aug. 24, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 28, 2004.

Application for Transfer Denied Nov. 23, 2004.

William P. Nacy, Jefferson City, MO, for Appellant.

Michael L. McDorman, Versailles, MO, for Respondent.

Before HARDWICK, P.J., SPINDEN and NEWTON, JJ.

LISA WHITE HARDWICK, Judge.

Gary White appeals from a judgment in a discovery of assets action concerning his mother's estate. He contends the trial court erred in determining that his mother made a valid *inter vivos* gift of $84,111.47 to her second cousin, James Hicks, one month prior to her death. Appellant argues the judgment is unsupported by substantial evidence, is against the weight of the evidence, and erroneously applied the law in that there was no clear and convincing evidence of his mother's donative intent. We affirm.

### Factual and Procedural History

Mildred Fern Thompson died intestate on March 2, 2001. Her son and sole heir, Gary White, was appointed as the personal representative of her estate. While attempting to inventory assets of the estate, Mr. White found bank documents indicating that his mother, one month prior to her death, had endorsed checks transferring $84,111.47 from her IRA account into a bank account titled to James Hicks. Mr. White contacted Mr. Hicks, who was his mother's second cousin, and requested that the proceeds of the IRA account be turned over to the estate. Mr. Hicks refused, asserting Mrs. Thompson gave him the money as a gift.

Mr. White filed a Petition for Discovery of Assets to determine whether the $84,111.47 in funds transferred to Mr. Hicks' bank account constituted an asset of his mother's estate. Upon evidence presented, the trial court made the following findings:

> Decedent [Mrs. Thompson] moved to Morgan County, Missouri in the early 1990s and resided therein until her death. Respondent [Mr. Hicks] would visit with her, play cards with her, fish with her, and drive around the area with her. Decedent at one time indicated to Respondent that Respondent was the only family she had in Morgan County, Missouri. . . .

> Decedent suffered from cancer but was alert and clear of mind.

> On February 2, 2001, while still suffering from cancer but while remaining alert and clear, Decedent and Respondent appeared at a branch of the Department of Revenue located in Versailles, Missouri, where Decedent re-titled her mobile home in the name of her grandson, Gary Mac White, II.

> Also on February 2, 2001, Decedent and Respondent went to the Bank of Versailles, where Decedent opened a checking account in Respondent's name while naming herself as the pay-on-death beneficiary.

> Louella Pryor, an employee of the Bank of Versailles, explained to Respondent and Decedent the effect of the account and the transfer of money, and Mrs. Pryor was certain that both parties understood that if the money was transferred to the account of Respondent it would be his sole property.

> After the account was opened, Mildred Fern Thompson endorsed seven (7) checks which totaled $84,111.47 and gave them to Respondent.

> Respondent accepted the checks, endorsed them, and deposited them into the account which had been opened in his name alone.

Based on these findings, the trial court concluded Mrs. Thompson was competent and was not unduly influenced by Mr. Hicks. The court further held that Mrs. Thompson made a valid *inter vivos* gift when she opened a bank account in Mr. Hicks' name and endorsed checks to him in the total amount of $84,111.47. Mr. White appeals from the court's final judgment, which effectively determined the estate had no title to or right to possession of the gifted funds.

### Standard of Review

In this court-tried case, we must affirm the judgment unless it is unsupported by the evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re Estate of Campbell*, 939 S.W.2d 558, 561 (Mo.App.1997). An appellate court defers to the factual findings of the trial court, which is in a superior position to assess credibility, but evaluates independently the trial court's conclusions of law. *Elton v. Davis*, 123

S.W.3d 205, 210 (Mo.App.2003). We view the evidence and inferences in a light most favorable to the trial court's decision. *Walker v. Hanke,* 992 S.W.2d 925, 930 (Mo.App.1999). Given our presumption that the trial court ruled correctly, the appellant has the burden of showing error. *Id.*

### POINT ON APPEAL

■ In his sole issue on appeal, Mr. White contends the trial court erred in determining that his mother gifted the proceeds of her IRA account to Mr. Hicks. Appellant asserts the judgment was unsupported by substantial evidence, was against the weight of the evidence, and erroneously applied the law, in that there was no clear and convincing evidence of his mother's donative intent to make a valid *inter vivos* gift.

This issue arises in the context of a discovery of assets proceeding, which is a search for assets owned by the decedent at the time of her death. *In re Estate of Boatright,* 88 S.W.3d 500, 509 (Mo.App. 2002). The trial court had to determine whether title to the assets in question had passed from Mrs. Thompson to Mr. Hicks prior to her death. *Id.* Mr. Hicks claimed that he received title to the IRA proceeds, in the amount of $84,111.47, when Mrs. Thompson gave him those funds as a gift on February 2, 2001, one month prior to her death.

■ Generally, a person claiming an *inter vivos* gift has the burden of proving the gift by clear and convincing evidence. *Walker,* 992 S.W.2d at 931. The requirements for completion of an *inter vivos* gift transfer are: 1) the donor's present intention to make a gift to the donee; and 2) acceptance of the gift by the donee, whose ownership takes effect immediately and absolutely. *Id.* Since direct evidence of a decedent's donative intent is rarely available, evidence of the decedent's "conduct is an enlightening ingredient in discerning intent." *Campbell,* 939 S.W.2d at 562.

Appellant contends Mr. Hicks failed to prove by clear and convincing evidence that Mrs. Thompson intended to donate to him the proceeds of her IRA account. The trial court's judgment includes specific findings that Mrs. Thompson voluntarily went to the bank with Mr. Hicks, knowingly opened a bank account in his name, and then purposefully endorsed checks to him totaling $84,111.47. Our review of the record indicates these findings were supported by the testimony of Mr. Hicks and Louella Pryor, an employee of the Bank of Versailles. Appellant argues this evidence was insufficient to meet the clear and convincing threshold because Mr. Hick's testimony was self-serving and because another witness, Lois Renner, "offered the only reliable evidence at trial of Mrs. Thompson's intent."

Mrs. Renner was a neighbor and friend who helped care for Mrs. Thompson when she became ill approximately two years before her death. Mrs. Renner testified that, during the early stage of the illness, Mrs. Thompson said she needed "somebody to handle" her "$80,000 security" because "she assumed she would probably wind up in a nursing home, and she wanted funds available." Mrs. Renner did not agree to handle the money and subsequently moved to Nebraska. When they spoke later, Mrs. Renner testified that Mrs. Thompson said "she gave [the $80,000] to her cousin, [Mr. Hicks], simply because she was feeling he was close enough to help her out if she needed it."

Appellant argues Mrs. Renner's testimony established that Mrs. Thompson never intended to make a gift of the money to Mr. Hicks; rather, she intended to have him hold the money in the event she need-

ed it to pay any nursing home bills. As noted, however, there was contrary evidence in the record.

Mr. Hicks testified that Mrs. Thompson said she was giving him the money "as a gift." When Mrs. Thompson first contacted Mr. Hicks about the matter on January 27, 2001, she offered to give him both the money and her mobile home because she knew she was terminally ill. Mr. Hicks declined the mobile home because it was too small for his family. One week later, at Mrs. Thompson's request, he drove her to the license bureau to transfer the mobile home into her grandson's name. Mrs. Thompson also requested him to drive her to the Bank of Versailles, where she opened an account in Mr. Hicks' name and endorsed checks to him totaling $84,111.47. Mr. Hicks testified that Mrs. Thompson placed no conditions or restrictions on his use of the money, and that she never mentioned any possibility of using the money for a nursing home.

Although Mr. Hicks' testimony may be considered self-serving, that factor affects the weight of the evidence and not the admissibility. It is the trial court's function to decide the weight and value to be given to the testimony of witnesses. *Campbell,* 939 S.W.2d at 564. The fact finder may believe all, part or none of any witness' testimony. *Id.* We give considerable deference to the trial court's determination of credibility based on its superior position to evaluate sincerity, character, and other intangibles at trial that may not be apparent from the record. *Id.*

"Whether a valid inter vivos gift was made is a question of fact." *Moseley v.*

*Moseley,* 795 S.W.2d 464, 467 (Mo.App. 1990). The gift determination in this case hinged upon the relative credibility of Mr. Hicks and Mrs. Renner. If the court believed Mr. Hicks, "there could remain little doubt of the gift; if not believed, a gift could hardly have been established." *Campbell,* 939 S.W.2d at 564.

In weighing the credibility of the primary witnesses, the court no doubt considered that Mr. Hicks' description of events at the Bank of Versailles was fully corroborated by Mrs. Pryor, the bank employee who assisted Mrs. Thompson in opening the new bank account. Mrs. Pryor testified that Mrs. Thompson was "very alert" and "very, very certain ... that she wanted to open an account and put it into Mr. Hicks' name only."

The trial court resolved the conflicting trial evidence by determining there was credible evidence of Mrs. Thompson's donative intent. We defer to that factual determination, as it is supported by the evidence and is not against the weight of the evidence. We further find the trial court properly applied the law in determining there was clear and convincing evidence that Mr. Hicks received $84,111.47 from Mrs. Thompson as a valid *inter vivos* gift. The judgment is affirmed.

All concur.