JENNEMANN et ux. v. HERTEL.

No. 28732.

St. Louis Court of Appeals.

Missouri.

Feb. 16, 1954.

Motion for Rehearing or to Transfer
to Supreme Court Denied
March 12, 1954.

Not to be reported in State Reports.

Edward H. Tenney, Jr., A. Robert Belscher, St. Louis, for appellants.

Henry Ebenhoh, Walter S. Berkman, St. Louis, for respondent.

ANDERSON, Presiding Judge.

This is an action brought by John W. Jennemann and Edna A. Jennemann, husband and wife, against George H. Hertel to recover the reasonable value of certain property, towit, a peach tree, apple tree, fifteen rose bushes, and a number of iris plants, all located on plaintiffs' land and alleged to have been destroyed as the result of excavating operations carried on by defendant on property adjacent to plaintiffs' land. In addition, punitive damages were sought in the amount of $5000.

The trial resulted in a verdict and judgment for plaintiffs for $500 actual damages and $1250 punitive damages. Thereafter, the court sustained defendant's motion for new trial on the ground that it erred in giving and reading to the jury Instruction Number 1. From this order, plaintiffs have appealed.

The allegations of the petition, so far as material to the issues on this appeal, were that the defendant, in March, 1950, undertook to excavate large quantities of earth immediately east of plaintiffs' property, so that the level of the property being excavated was caused to become several feet lower than plaintiffs' property; that plaintiffs protested to defendant that such cuts were causing plaintiffs to lose the natural support of their ground, but that defendant nevertheless continued with the excavating and also dug into the land belonging to plaintiffs, and negligently and carelessly permitted plaintiffs' land to crumble, crack, and break away; that by reason of such loss of support plaintiffs' plants, shrubbery and clothes poles have fallen over the embankment, and a fruit tree belonging to plaintiffs was then breaking away from plaintiffs' land. It was also alleged that the entire side on the eastern border of plaintiffs' property, and for many feet to the west of said border, was cracking, crumbling and breaking away from the rest of plaintiffs' land; that plaintiffs' driveway was in imminent danger of collapsing, and that the use of the driveway had become dangerous.

It was further alleged that plaintiffs were entitled to the support of their land which was previously afforded by the land east of plaintiffs' property, and that the support which had been interfered with and taken away by defendant was the natural support of plaintiffs' land and not the support of plaintiffs' buildings thereon; that defendant furnished neither temporary nor permanent support to plaintiffs' land during the course of the excavation, and refused to furnish such support, though often requested so to do.

The prayer of the petition was for $5000 to compensate plaintiffs for the actual damage to their land, and for $5000 punitive damages.

The foregoing allegations of the petition were denied by defendant's answer.

Plaintiffs are the owners of property known and numbered as 6734 Plateau Avenue in the City of St. Louis. Said property is located on the south side of Plateau Avenue. It has a frontage of 60 feet and a depth of approximately 166½ feet.

Defendant, Hertel, in March, 1950, was engaged in erecting prefabricated houses on the land east of and adjacent to the Jennemanns' property. A part of this work consisted of clearing off and leveling said ground. The excavation along plaintiffs' property line consisted of a cut about fourteen inches below the surface of plaintiffs' property at the front sidewalk, and increased to a depth of about seven feet at the rear of the lot.

Located on plaintiffs' property was an iris bed which was, according to plaintiffs' evidence, about two feet wide and seventy-five feet long. There were also a three year old peach tree, a three year old apple tree, fifteen rose bushes, and a plum tree. The iris bed was on the eastern edge of plaintiffs' lot, and the plum tree was about two feet from the eastern border of plaintiffs' land. The record does not show the exact location of the peach tree, apple tree or rose bushes, but from the evidence it

could be inferred that they were close to the eastern line of plaintiffs' lot.

Plaintiff John Jennemann testified that while defendant's man was operating the excavating machine he "scooped" up the iris bed and took it away entirely, and that they also "took away" the peach tree. When asked about the apple tree, the witness stated: "That was taken out with the scoop as they took the rest of the dirt out." The roots of the plum tree, located about two feet inside plaintiffs' property, were bared, and thereafter moved eastward until the tree came to rest about eight inches east of the east line of plaintiffs' property. The witness did not testify as to how the rose bushes were destroyed.

Mrs. Jennemann testified:

"Q. Did you have roses along the boundary? A. Yes.

"Q. What happened to those? A. Same as the others.

"Q. They went over the line, did they? A. Yes."

Mrs. Jennemann further testified that the little apple tree "is scooped away", and that the peach tree "was the same as the apple." She corroborated her husband's testimony in that the plum tree moved off their lot.

Both Mr. and Mrs. Jennemann testified that defendant's operator cut into plaintiffs' land, the former testifying that at one point defendant cut "three feet inside my line."

There was evidence on the part of plaintiffs that after the grading started a number of large cracks appeared in plaintiffs' land. These cracks developed as far as ten or eleven feet from the boundary line, and were an inch to an inch and a half wide. There was also evidence that a large hole appeared in plaintiffs' driveway which was located a few feet from the border line.

Defendant and Joseph E. Berry, the operator of the excavating machine, both testified that at no time during the operations was there an encroachment of plaintiffs' land. Defendant stated that the digging and grading "seemed to me about four or five feet from the line." Like testimony was given by Berry. The latter also testified that the ground was filled along the entire line of Mr. Jennemann's property and that in the operations there he never "got down" to any good fresh soil.

Defendant, Hertel, testified that the south half of the land immediately adjoining the property of plaintiffs "consisted of nothing but tin cans, ashes, bed springs, springs from old automobiles, rubber tires, carbide cans, tin cans, and what not." He also stated that the embankment between plaintiffs' land and the land immediately east consisted of nothing but ashes, which would constantly fall away as the work was being done. To remedy this situation, Mr. Berry was hired to put in dirt to support the bank. Hertel further testified:

"When Panda Construction Company was digging out all these ashes, cans, and so forth, hauling it away, naturally, it is not like good earth, it is not solid, and that night a terrific gusher of rain came along, which I had no control of, and caused the bank to fall down, the water caused it to fall down.

"Q. Were there certain parts of the Jennemann property that washed down with it? A. Yes, a very small part of it at one point.

"Q. What would you say was the size of that indenture? A. This particular place where it had broke down over the line, probably two or three feet at the most in length. I didn't measure it.

"Q. What was the nature of that ground that was removed and that was washed away? A. It was all ashes, rotted ashes.

"Q. Was there any soil on that embankment at all? A. Not at all, no."

Defendant further testified that he repaired that portion of plaintiffs' land that was washed out on the occasion in question, and sodded it and the embankment.

Defendant testified:

"The whole area where the plum tree stands was nothing else but tin cans, ashes and junk—the whole area.

\* \* \* \* \* \*

"Q. What is on Jennemans' property? A. I would say nothing but a layer of ashes, cinders and corruption of different kinds."

Instruction No. 1, which the trial court held to be erroneous, is in words and figures as follows, towit:

"The Court instructs the jury that if you find from the evidence that plaintiffs were at the times mentioned herein the owners of real estate located at 6734 Plateau Avenue in the City of St. Louis, Missouri; and if you further find from the evidence that during the months of March and April, 1950, the defendant undertook and carried on a construction project on land located immediately east of plaintiffs' property on Plateau Avenue; and if you further find from the evidence that the defendant at that time personally directed and controlled the manner and method of removal of dirt immediately adjacent to plaintiffs' property; and if you further find from the evidence that a peach tree, an apple tree, fifteen rose bushes, and iris plants not to exceed 75 square feet were exclusively located on plaintiffs' property; and if you further find from the evidence that the persons removing such dirt under such direction and control of defendant, if you so find, as the direct result of such operations, destroyed such peach tree, apple tree, fifteen rose bushes, and iris plants not to exceed 75 square feet, then your verdict shall be for the plaintiffs and against the defendant."

Plaintiffs in their petition sought to recover damages alleged to have been sustained by them as a result of certain excavating operations conducted by defendant. It is difficult to determine from an examination of the petition whether plaintiffs were attempting to state a cause of action in trespass for removal of lateral support, an action for negligence, or a trespass upon plaintiffs' land accomplished by an unlawful entry with force. Nor is it possible to determine from Instruction No. 1 which of the above theories plaintiffs intended to submit to the jury. The instruction was incorrect on any of the theories mentioned.

The right to lateral support is limited to land in its natural condition, and does not extend to filled ground. Sime v. Jensen, 213 Minn. 476, 7 N.W.2d 325. In the case at bar plaintiffs offered no evidence that the ground which gave way during defendant's operations was land in its natural state. Plaintiffs were therefore not entitled to go to the jury on the theory of trespass by reason of withdrawal of lateral support. The trial judge evidently took this view of the matter for, by Instruction No. 4, the jury were charged that the issue concerning defendant's failure to provide lateral support was withdrawn from their consideration.

Absent proof by plaintiffs, and a requirement that the jury find that the land in question was in its natural condition, liability for injury to the vegetation on plaintiffs' lot by reason of "removal of dirt immediately adjacent to plaintiffs' property" could only rest upon proof of negligence. Instruction No. 1 does not properly present this theory. There are no facts hypothesized from which the jury could find negligence as the direct and proximate cause of damage.

Appellants contend that Instruction No. 1 is good as submitting the issue of trespass by unlawful entry. The gist of this form of action is the unlawful entry upon the plaintiffs' property. Such entry may be accomplished by the projection of force beyond the boundary of the land. In the case at bar there was evidence that an entry was accomplished by the projection of a part of the excavating machine beyond the boundary of plaintiffs' land and the uprooting of the fruit trees, rose bushes, and iris bed. This evidence was contra-

dicted by the defendant. Unlawful entry, therefore, became a contested issue of fact which should have been submitted to the jury. Nowhere in Instruction No. 1 is there hypothesized a fact showing an unlawful entry.

Appellants further contend that a proper charge was given if Instruction No. 1 is read in conjunction with Instruction No. 4. Instruction No. 4 merely withdrew the issue of lateral support, and did not supply the missing element of unlawful entry; nor did it withdraw the issue of negligence. With both instructions before them the jury were given a roving commission to find for plaintiffs on any theory of negligence which might strike their fancy, without any guide in the determination thereof or any hypothesized fact or facts upon which to base such a finding.

The action of the trial court in sustaining the defendant's motion for new trial because of error in Instruction No. 1 was proper. The order appealed from is affirmed.

RUDDY and BENNICK, JJ., concur.