**Marianne C. KING, Respondent,**

v.

**CITY OF INDEPENDENCE, Missouri, Appellant.**

**No. WD 59666.**

Missouri Court of Appeals,
Western District.

Jan. 8, 2002.

Mark D. Katz, Kansas City, for appellant.

George E. Kapke, Independence, for respondent.

Before VICTOR C. HOWARD, P.J., PATRICIA A. BRECKENRIDGE and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

The City of Independence, Missouri ("the City") appeals the judgment of the trial court entered in favor of Marianne C. King on her nuisance petition in which she claimed that she experienced on several occasions sewage backing up into her basement and garage. The trial court awarded Ms. King damages in the amount of $20,000. The City raises two points on appeal, alleging that the trial court erred in finding a permanent nuisance and that the trial court improperly fixed the amount of damages.

We affirm in part, reverse in part, and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. King purchased her home in Independence, Missouri, in July of 1993. She suffered water damage in her basement and garage when the sewer backed up on several occasions after rainfall. The first incident occurred in July 1998. Sewage came up the floor drains in her basement, and it soaked her carpet and damaged other personal property. The backup also covered the entire floor of her garage and flowed out of her garage door. After Ms. King called the City, a City worker responded and "blew out the line," and the sewage receded when the rain stopped. The carpet was removed, and the basement was cleaned, dried, and disinfected. Ms. King's homeowner's insurance covered this incident.

Later that month, Ms. King suffered another backup, and she believed that the water in her basement appeared deeper than it was from the first backup. Within days after the second backup, mildew began to form in the basement. Subsequent backups occurred in September, October, and November, as well as in January and February of 1999. In all, she experienced seven backups. After each backup Ms. King notified the City, the City responded, the rain stopped, and the sewage receded.

In March of 1999, the City put "Instaform" in the sewer main that served Ms. King's home, and she has not experienced any more backups. The repair process took less than a day and involved the placement of a sleeve down the inside of the main. In April of 1999, a City crew ran a camera down her lateral line, and the crew did not indicate that she had a problem with her lateral line.

Ms. King filed her action in nuisance against the City in March of 2000, seeking damages in the amount of $50,000. After a bench trial, the trial court found the City "maintained and allowed a permanent nuisance" and entered judgment in favor of Ms. King in the amount of $20,000. No request was made to the trial court for findings of fact and conclusions of law. This appeal followed.

## II. STANDARD OF REVIEW

For review purposes, we will be guided by the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will reverse the trial court's judgment only if there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32. Because of the trial court's superior position to determine the credibility of witnesses, we defer to the trial court's factual findings. *Wildflower Cmty. Ass'n, Inc. v. Rinderknecht*, 25 S.W.3d 530, 534 (Mo.App. W.D.2000). We view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the trial court's judgment, while disregarding all contrary evidence and inferences. *Id.* Also, the trial court's judgment will be affirmed under any reasonable theory that is supported by the evidence. *Tower Properties Co. v. Allen*, 33 S.W.3d 684, 688 (Mo.App. W.D.2000). We will, however, set aside a trial court's judgment as "against the weight of the evidence" if we are left with a firm impression that the judgment is wrong. *Morgan Publ'ns, Inc. v. Squire Publishers, Inc.*, 26 S.W.3d 164, 172 (Mo.App. W.D.2000).

## III. LEGAL ANALYSIS

### A. Permanent or Temporary Nuisance

"Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his property." *Green Acres Land & Cattle Co., Inc. v. State*, 766 S.W.2d 649, 651–652 (Mo.App.

W.D.1988) (quoting *Frank v. Envtl. Sanitation Mgmt., Inc.*, 687 S.W.2d 876, 880 (Mo. banc 1985)). A sewer backup into private premises may be actionable against a municipality for nuisance. *Fletcher v. City of Independence*, 708 S.W.2d 158, 167 (Mo.App. W.D.1986). Nuisances come in one of two varieties: permanent or temporary. *Vermillion v. Pioneer Gun Club*, 918 S.W.2d 827, 831 (Mo.App. W.D.1996).

In its first point on appeal, the City contends the trial court erred in finding that the sewer backups constituted a permanent nuisance. The City argues that Ms. King did not plead permanent or temporary nuisance, and, therefore, as a matter of law, the court was required to treat the allegation of nuisance as a temporary nuisance. Further, the City alleges that "this nuisance, if it so was, as a matter of law was temporary" because it was abatable.

■ The questions of whether a use is "unreasonable" and whether it "substantially" impairs the rights of another to use his or her property are questions of fact. *Rosenfeld v. Thoele*, 28 S.W.3d 446, 450 (Mo.App. E.D.2000). The City focuses on the trial court's classification of the nuisance as permanent. Actually, in neither of its points on appeal does the City challenge the trial court's threshold factual finding—that the repeated backups into Ms. King's basement constituted an unreasonable use of Ms. King's property that substantially impaired her right to peacefully enjoy her property—as being unsupported by substantial evidence or as being against the weight of the evidence. Accordingly, we defer to the trial court's factual determination that a nuisance existed, and we will not disturb that decision on appeal.

With that in mind, Ms. King's petition alleged:

4. That on July 7, 1998, and on numerous and various dates and occasions thereafter, the defendant's sanitary sewer system backed up and caused sanitary sewage to be deposited in plaintiff's residence at 2735 Glendale, Independence, Missouri.

5. That such action and conduct of the defendant constitutes a nuisance.

6. That on each occasion in which the defendant's sanitary sewage system deposited sanitary sewage into the plaintiff's residence, the plaintiff notified defendant and demanded defendant correct and end such nuisance.

7. That defendant's action in maintaining and allowing a nuisance as aforesaid caused damage to plaintiff's residence and denied plaintiff the reasonable use and enjoyment of her residence, all to plaintiff's damage in the sum of Fifty Thousand and no/100 ($50,000.00) Dollars.

■ "The distinguishing feature between a permanent and temporary nuisance is the 'abatability' of the nuisance." *Vermillion*, 918 S.W.2d at 831 (quoting *Racine v. Glendale Shooting Club, Inc.*, 755 S.W.2d 369, 374 (Mo.App. E.D.1988)). As we have explained:

> When a nuisance's abatement is reasonable and practical, it is a temporary nuisance. A temporary nuisance may be abated at any time by a reasonable effort or by an order of the court. A permanent nuisance generally results from a permanent construction which is injurious as installed, rather than injurious through its use, and where abatement would be impracticable or impossible.

*Id.* (citations omitted).

■ We agree with the City's general proposition that "[i]f allegations are doubtful as to whether the pleaded cause of

action is for a permanent nuisance or a temporary nuisance, courts should treat the nuisance as temporary." *Id.* This is so "because adjudication of a permanent nuisance amounts to a grant of an easement to the wrongdoer to continue to interfere with the plaintiff's land." *Scantlin v. City of Pevely,* 741 S.W.2d 48, 50 (Mo.App. E.D.1987). Ms. King's petition did not characterize the nuisance as permanent or temporary. Moreover, the petition pleaded facts and prayed for relief that sufficiently established that her claim was for damages caused by a temporary nuisance. It alleged that the repeated sewer backups substantially impaired and diminished the use and enjoyment of her property, and it prayed for damages to compensate her for the overflow of sewage into her basement and garage. It did not seek prospective relief, nor did it allege that the backups would continue in the future. In fact, the backing up of sewage in Ms. King's basement was an abatable nuisance. Ms. King testified that the problem did not persist after the February 1999 occurrence because the City had installed a sleeve in the main. Therefore, as a matter of law, the trial court erred in concluding that a permanent nuisance existed. *See Vermillion,* 918 S.W.2d at 831.

**B. Measure of Damages**

■ The City's second point attacks the trial court's award of $20,000 in damages. The measure of damages for a nuisance depends on whether such nuisance is permanent or temporary. *Fletcher,* 708 S.W.2d at 178. Although we have determined as a matter of law that Ms. King's nuisance was temporary, an understanding of the types of damages would be beneficial in our discussion of the City's second point.

■ In a permanent nuisance case, damages are measured by the difference in the fair market value of the property immediately before and after injury. *Id.* Damages caused by a temporary nuisance, however, are referred to as the "diminution in value" of the property during the duration of the nuisance, commonly measured by the reduction in the rental value. *Byrom v. Little Blue Valley Sewer Dist.,* 16 S.W.3d 573, 577 (Mo. banc 2000). The measure of damages caused by a temporary nuisance also includes other incidents of damage, such as loss of comfort and health. *Vermillion,* 918 S.W.2d at 832; *Fletcher,* 708 S.W.2d at 178.

In its first subpoint, the City claims that there is no substantial evidence to support the award of $20,000 because Ms. King presented no evidence of diminution in value. In its second subpoint, the City also charges that Ms. King was unqualified to render an opinion as to the value of her home.

■ We agree that there was no substantial evidence of diminution in rental value, but we also note that there are some occasions where, regardless of whether the nuisance is permanent or temporary, the proper measure of damages reflects the cost of repair:

> Where the injury is extensive or permanent the measure of damages is the reduction in the overall value of the property as a whole; in contrast, where the injury is slight—when compared with the overall size and value of the realty—and the injury can readily be remedied by repair, then the measure of damages is the expense of restoration. The latter method is not inconsistent with the former. This, because in the case of slight injury the cost of repair logically reflects the amount the property was reduced in value.

*Scantlin,* 741 S.W.2d at 51 (quoting *Smith v. Norman,* 586 S.W.2d 84, 85 (Mo.App. E.D.1979)).

Even so, our review of the record suggests that the trial court did not apply the proper measure of damages. The only evidence presented in support of the $20,000 damages award was Ms. King's testimony. In fact, Ms. King was the only witness to testify during her case-in-chief. She testified that the value of her home with a finished basement, including a family room, a bedroom, and a working room, was "about $90,000." Ms. King also opined, after the City's objection was overruled, that the value of her house after the backups and with mildew growing in an unfinished basement "would probably be about $70,000." To justify these figures, she stated that she arrived at the amounts by examining the cost of other houses in the neighborhood that were bought and sold.

We recognize that an owner is generally presumed competent to testify to the value of his real property even though he does not qualify as an expert. *Sharaga v. Auto Owners Mut. Ins. Co.,* 831 S.W.2d 248, 252 (Mo.App. W.D.1992). Where, as here, testimony is challenged on the basis of sufficient foundation, the challenge is essentially one of admissibility, and such challenges must be raised by a timely objection or a motion to strike. *Cf. Washington by Washington v. Barnes Hosp.,* 897 S.W.2d 611, 616 (Mo. banc 1995) (discussing expert testimony). "To preserve an objection to evidence for review, the objection must be specific, and the point raised on appeal must be based upon the same theory." *State v. Vann,* 7 S.W.3d 407, 410 (Mo.App. W.D.1999) (quoting *State v. Driver,* 912 S.W.2d 52, 54 (Mo. banc 1995)). "It is particularly important

that where an inadequate foundation has been laid for admission of evidence that the objection made be specific as such foundation deficiencies can frequently be remedied. We will not review the contention of inadequate foundation raised for the first time on appeal." *State v. Blue,* 875 S.W.2d 632, 633 (Mo.App. E.D.1994) (quoting *State v. Jones,* 569 S.W.2d 15, 16 (Mo.App.1978)). Thus, as it relates to the City's second subpoint, the issue has been properly preserved for review because the City objected to Ms. King's testimony as "hearsay and opinion without foundation."

Even with this general presumption favoring a landowner's testimony of value, landowners do not have *carte blanche* to engage in speculation. We have cautioned:

> [W]hen an owner's opinion is based on improper elements or foundation, his opinion loses its probative value. Or, where the basis for a test as to the reliability of the testimony is not supported by a statement of facts on which it is based, or the basis of fact does not appear to be sufficient, the testimony should be rejected. Judicial liberality in permitting an owner to testify as to his opinion of the amount of the loss does not allow an unrestricted right to engage in guesswork.

*Carmel Energy, Inc. v. Fritter,* 827 S.W.2d 780, 783 (Mo.App. W.D.1992) (citations omitted). Here, Ms. King was testifying concerning the value of the home prior to the backups and after the backups. Thus, regardless of whether she was qualified to give those opinions of value or not,[1] she testified regarding the change in market value of her home, which is the measure of damages for a permanent nuisance. Based on Ms. King's testimony, that change in market value would amount to $20,000, the amount awarded by the trial

---

1. Objections to her testimony on redirect were sustained.

court. Thus, it appears that the trial court applied the measure of damages applicable to a permanent nuisance, which is a reasonable assumption considering the trial court's express finding of a permanent nuisance. This is inconsistent with our finding that a temporary nuisance existed.

Before concluding that the trial court's award was improper, though, we must consider whether the evidence supports any reasonable theory, in which case the judgment must be affirmed. The only other evidence of damages offered by Ms. King was an estimate for the repairs of the basement. The "cost of repair" can be an appropriate manner of measuring damages for a temporary nuisance. We have explained:

> An exception to the diminution in value measure of damages for damage to real or personal property is the cost of repair test. The cost of repair is competent evidence to be considered when property can be restored to its former condition at a cost less than diminution of value. However, the cost of repair is not proper as the measure of damages unless the damage is comparatively insignificant considering total value.

*Sharaga*, 831 S.W.2d at 252 (citations omitted). *See generally* Dobbs, *Law of Remedies* § 5.6(2) (2d ed.1993); 58 Am.Jur.2d *Nuisances* § 303 (1989).

Even assuming *arguendo* that cost of repair would have been appropriate here, "[a] court ... cannot apply cost of repair damages until after it hears evidence of value." *Evans v. Werle*, 31 S.W.3d 489, 492 (Mo.App. W.D.2000). Here, the City objected to the repair estimate offered into evidence by Ms. King as hearsay without foundation. The objection was sustained. Thereafter, no attempt was made to lay a foundation for admission of the estimate, nor was it offered again. Without evidence of value, the trial court was simply unable to apply cost of repair damages.

■ Based on the foregoing, we are left with the firm impression that the award of $20,000 was unjustified. If the trial court measured damages based on a permanent nuisance, it erroneously applied the law. As unlikely as it may be, if the trial court attempted to apply cost of repair, there is no substantial evidence to support it. Therefore, the trial court's damages award must be reversed.

■ The City's final subpoints concern the fact that Ms. King did not seek recovery for the initial backup.[2] In its third subpoint, the City claims that Ms. King did not establish that the subsequent backups caused the damage. It argues that she did not demonstrate that the first backup did not cause the entirety of her damage. Similarly, the City in its final subpoint contends that the trial court failed to apportion damages by severing out the damages caused by the first backup. After a thorough review of the record, these arguments are without merit.

The evidence established that, after the first backup, the carpet soaked up most of the sewage and was removed. Then the basement was cleaned and disinfected, and the damaged personal property was removed. Thus, with Ms. King's basement in such condition prior to the second backup, there was substantial evidence to support the trial court's conclusion that the

---

2. The City claims in their final two subpoints that there was evidence of six backups and that Ms. King sought recovery for only the last five. Our review of the record, however, revealed evidence of seven backups that occurred, as outlined in the Factual and Procedural Background portion of this opinion. The nucleus of the City's arguments in these two subpoints is that Ms. King did not seek damages for the initial backup. As such, this inconsistency does not affect our analysis.

balance of the damage was caused by the subsequent backups, which also means that there was no need for the court to apportion damages. This conclusion is not against the weight of the evidence.

## IV. CONCLUSION

We are confident that the trial court employed great effort in its attempt to determine a fair amount of damages. However, after a thorough review of the record, we are left with a firm impression that its characterization of the nuisance and its award of damages is wrong. Accordingly, we reverse that portion of the trial court's judgment finding that the nuisance was permanent and direct the trial court to identify the nuisance as temporary. We further conclude that the case must be remanded for a retrial only on the issue of damages for a temporary nuisance. "A case should not be reversed for failure of proof without remand unless the record demonstrates that all available essential evidence has been presented and that plaintiff could not recover in any event." *McCardie & Akers Const. Co., Inc. v. Bonney,* 647 S.W.2d 193, 195 (Mo. App. E.D.1983). In all other respects, the judgment is affirmed.

VICTOR C. HOWARD, P.J, and PATRICIA A. BRECKENRIDGE, J., concur.