Larry and Judy THOMAS,
et al., Appellants,

v.

CITY OF KANSAS CITY, Missouri,
Respondent,

City of Raytown, Missouri, Respondent.

No. WD 60046.

Missouri Court of Appeals,
Western District.

Submitted July 2, 2002.

Sept. 10, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 26, 2002.

Application for Transfer Denied
Jan. 28, 2003.

Dennis J.C. Owens, Kansas City, appellants.

Daniel G. Jackson, Kansas City, for City of Kansas City.

Brandon D. Mizner, Kansas City, for City of Raytown.

Before HAROLD L. LOWENSTEIN, P.J., JAMES M. SMART, JR., and THOMAS H. NEWTON, JJ.

JAMES M. SMART, JR., Judge.

Larry and Judy Thomas appeal from the trial court's dismissal of their claim against the respondents, the City of Kansas City, Missouri, and the City of Raytown, Missouri, for damages and injunctive relief as a result of surface water flooding allegedly caused by the condition of the respective municipalities' property. The trial court dismissed the action, with prejudice, for failure to state a cause of action against the respondents. Because we determine that the Thomases stated a claim for personal injuries caused by the respective cities' unreasonable use of property causing flooding as a result of the diversion of surface waters, we reverse the trial court ruling and remand the case for further proceedings.

## Procedural Background

The appellants filed their petition in this action on July 18, 2000. Seven months later, the Thomases filed their third amended petition, the one at issue in this case. In that petition, the Thomases stated that they own property at 8868 E. 52nd Terrace, Kansas City, Missouri, located downhill from property owned by the City of Raytown. They alleged that around April 1, 1991, their property began experiencing problems with flooding; that in the summer of 1991, they notified the City of Kansas City, Missouri, of "the flooding problem," but that Kansas City failed to address the matter; that in July and October of 1998, groundwater mixed with sewage overflowed and spilled out of a ditch and entered the Thomases' home; and that this continued to occur during periods of rain in 1999 and 2000.

The Thomases alleged that an engineer informed them that their property was subject to flooding as a result of negligently designed, constructed, and maintained sewer and drainage systems (owned, in part, by Kansas City and, in part, by the City of Raytown) that allowed storm water mixed with sewage to flood their home. The Thomases alleged that in October of 1998, they also notified the City of Raytown of the flooding problem, but that neither city had addressed the problems in any way. The petition stated that as a result of the flooding problems, the personal property of the Thomases has been destroyed, their real property has been ruined, and their home has been flooded by raw sewage. They claim this has resulted in bacterial contamination of their home, excessive illnesses, and sicknesses for the Thomases and for their children. They sought damages for past injuries, and sought also the issuance of injunctive relief restraining the cities from "permitting any ground water, sewage water, waste water or fluids" from flowing into any part of the Thomases' residence.

In response to the Thomases' third amended petition, the defendants Raytown and Kansas City filed motions to dismiss, asserting that the plaintiffs failed to comply with the court's order of January 18, 2001, requiring plaintiff to plead their claims with more specificity in certain respects. The cities also argued that the plaintiffs failed to adequately allege "any exception to the absolute bar of sovereign immunity" and, therefore, failed to state a claim. The City of Kansas City also contended the claims were barred by the applicable statute of limitations.

The Thomases failed to file any response to either city's motion to dismiss.

The trial court granted Raytown's separate motion to dismiss on April 11, 2001, and granted Kansas City, Missouri's separate motion to dismiss on May 1, 2001, dismissing the Thomases' cause with prejudice for failure to state a claim upon which relief may be granted. The Thomases appeal.[1]

### Failure to State a Claim

We turn now to Point I, in which Appellants contend the court erred in dismissing their claim because, they say, they stated a cause of action in trespass.

### Count I

In Count I, the Thomases allege that public "sewer and drainage systems" were causing ground water and sewer water to flood their property and residence. They alleged that each city owned a "portion" of the sewer and drainage system. They as-

sert that in October 1998, they notified the City of Raytown that its failure to clean up the drainage ditch (of trees the City of Raytown had cut down) blocked the flow of water. They also allege "there were problems" with the design of the sewage system on the "Raytown side of the sewer line." They allege that the City of Raytown was negligent in the design, construction, and maintenance of its sewer and storm drainage system. They further alleged that they requested on numerous occasions that the defendants do certain things to attempt to alleviate the problems, but defendants failed to "alleviate the problems." They claimed that, as a result, a dangerous condition exists in the sewer and storm drainage system owned and operated by the City of Kansas City. They alleged also that the ditch "as maintained by the Defendant City of Raytown" was defective and dangerous as a result of debris that the City of Raytown failed to clean up. They allege damages, including damage to personal property and personal injuries, including sickness.

### Counts II and III

Count II is inapplicable to this appeal because it was a count asserted by other plaintiffs who are not appellants herein. Count III seeks injunctive relief, asserting that defendants have "permitted and/or caused" a "condition to exist" whereby ground water and sewage water floods the Thomases property. They allege the accumulation of water and contaminants has caused a health hazard to plaintiffs. They

---

1. On the same day they filed the notice of appeal, the Thomases also filed a motion to set aside the judgment, explaining that they have been attempting to negotiate with the cities in question, that the City's engineers have not provided discovery, and that they have been forced into bankruptcy, that they have discharged the attorneys previously representing them, and that they have been

"waiting on permission from the court" to hire a law firm. Plaintiffs asserted that their failures did not warrant the "harsh remedy of dismissal of their petition with prejudice." They asked the circuit court to "reverse and remand" its own order. That motion, as to which the trial court had no jurisdiction anyway, was denied on June 15, 2001.

claim injury to their dwelling and personal property for the "intentional and/or negligent actions which have caused and/or permitted the aforementioned flooding." They claim irreparable injury has resulted and will continue to result unless the cities are restrained from permitting any water from flowing into the Thomases' residence.

## Count IV

Count IV alleges that the cities knowingly permitted flood water and waste water to flow onto the Thomases property. It alleges that the Thomases are entitled to reasonable enjoyment and possession of their residential property. They allege that defendants are capable of making and designing a system which "does not allow for flood water, waste water, and sewage to flood plaintiffs' property causing injury to said property and interfering with plaintiffs' enjoyment and use of their property." They allege that, notwithstanding their requests, the cities have continued to commit and/or permitted the "unreasonable conduct which has caused the flooding and leakage of waste onto plaintiffs' property." They claim injury to their personal property, real property, and health.

## Standard of Review

■ We review *de novo* the grant of a motion to dismiss for failure to state a claim, examining the petition to determine whether it invokes principles of substantive law. *See Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 409–10 (Mo.App.W.D. 2000). The pleadings are liberally construed, and all alleged facts are accepted as true and construed in a light most favorable to the pleader. *See Id.* at 410. "In making our determination, we may not address the merits of the case or consider evidence outside the pleadings." *Brennan By and Through Brennan v. Curators of*

*the Univ. of Mo.*, 942 S.W.2d 432, 434 (Mo.App. W.D.1997).

■ The law generally favors trial upon the merits, and the criteria by which the sufficiency of petitions is judged have been developed to promote this purpose. *Goe v. City of Mexico*, 64 S.W.3d 836, 839 (Mo. App.2001). A pleading is sufficient where the facts necessary to constitute a cause of action can be obtained by a liberal construction of its averments. *Scheibel v. Hillis*, 531 S.W.2d 285, 289 (Mo. banc 1976). This is true even though the allegations may be uncertain or defective, or may be stated in an unskillful manner, but contain the necessary allegations to advise the defendant of the claim and the relief demanded. 71 C.J.S. Pleading § 257; *See C. Bennett Bldg. Supplies, Inc. v. Jenn Air Corp.*, 759 S.W.2d 883, 890 (Mo.App.1988).

■ A trial court should not dismiss a petition merely because the factual allegations seem more consistent with something other than plaintiff's stated legal theory. The court must examine the petition to determine whether the allegations provide for relief on any possible theory. 71 C.J.S. Pleading § 259; *Goe v. City of Mexico*, 64 S.W.3d 836, 840 (Mo.App.2001). The character of a cause of action is determined from the facts stated in the petition and not by the name given the action. *Goe*, 64 S.W.3d at 840.

## Characterizing the Claims

Looking at the pleaded contentions, and taking them at face value, it would appear that Count I is an attempt to plead a cause of action in negligence, at least as to the City of Raytown. Count III is a vaguely worded attempt to plead for injunctive relief, based on the defendants' "intentional or negligent actions which have caused and/or permitted the aforementioned flooding." Count IV is an attempt to plead a claim based on the cities' alleged unrea-

sonable use of their property causing surface waters to invade plaintiffs' property causing damage to plaintiffs and interference with their possession and use of their property. Count IV asserts violations of rights of possession, like a claim of trespass; but it also asserts violation of rights of enjoyment of property along with a claim of unreasonable actions, which would be characteristic of a nuisance claim. Now, on appeal, they assert that the trial court erred in dismissing the case because plaintiffs "stated facts that demonstrate a justiciable controversy in that the appellants clearly stated claims for trespass."

### Trespass or Nuisance?

It cannot be discerned from the record on appeal that the appellants ever attempted in the trial court to characterize the nature of their theories of recovery at all. When the defendants moved to dismiss the petition or moved for a more definite statement each time a petition was filed or amended, the Thomases never attempted to inform the court of the nature of their theories. Twice, their response was simply to seek leave to amend certain aspects of their petition. The third time the defendants moved to dismiss, the plaintiffs did not respond in any way. The Thomases, who had filed a personal bankruptcy petition and had discharged the attorneys handling this claim, did not respond to the challenge based on the statute of limitations nor to the assertion that their claims were barred by the doctrine of sovereign immunity. In short, they did little to help the trial court understand the nature or the validity of their claims. Nevertheless, because the law is geared to avoiding dismissal where facts stating a cause of action have been pleaded, the law still allows them the legal right to challenge the trial court ruling as to whether their petition stated a cause of action. *Goe v. City of Mexico*, 64 S.W.3d 836, 840–41 (Mo.App.

2001). It is immaterial how they choose to characterize their cause of action; the question is whether they stated a cause of action at all. *Id.*

In their brief on appeal, the Thomases cite two cases dealing with the standard of review with regard to a dismissal for failure to state a claim. A third case is quoted for the proposition that where a cause of action is a trespass, it will be treated as such, even though in form it may be another action. *Kerby v. Prairie Pipe Line Co.*, 222 Mo.App. 699 (4 S.W.2d 857, 860) (1928). The final case cited by the Thomases is *Jennemann v. Hertel*, 264 S.W.2d 911 (Mo.App.1954), which is cited for the proposition that trespass may be accomplished "by a projection of force from beyond the boundary of the land." *Id.* at 914.

In their reply brief, the Thomases rely on *Fletcher v. City of Independence*, 708 S.W.2d 158 (Mo.App.1986), to counter the argument of the respondent cities concerning sovereign immunity. *Fletcher* did not involve a claim of trespass, but was a claim of nuisance brought against the City of Independence based upon recurrent sewer backups into the basement of a home. *Id.* at 162. In *Fletcher*, the court held, *inter alia*, that the operation and maintenance of a systems of drains and sewers by a municipality constituted a proprietary function as to which the municipality may be liable. *Id.* at 167.

As already noted, the character of a cause of action is determined by the facts stated in the petition rather than by the name given the action. *Goe*, 64 S.W.3d at 840. The law recognizes differences between trespass and nuisance, although surface water mixed with sewage may constitute both a trespass and nuisance. *See* 78 Am Jur 2d, *Waters*, § 386 (2002). "Trespass has its origin in an intentional

act, even though the actor may not intend to invade the property of another." *Looney v. Hindman*, 649 S.W.2d 207, 212 (Mo. banc 1983). The concept of intentionality, on the other hand, is irrelevant to nuisance. *Clark v. City of Springfield*, 241 S.W.2d 100, 108 (Mo.App.1951). Nuisance is based on unreasonable land use that interferes with the right of the owners of the lower tenement to enjoy their property. *Frank v. Envtl. Sanitation Mgmt., Inc.*, 687 S.W.2d 876, 880 (Mo. banc 1985). Trespass involves an interference with possessory interests, while nuisance involves interference with enjoyment of property. *See Hansen v. Gary Naugle Constr. Co.*, 801 S.W.2d 71, 74 (Mo. banc 1990); *Hawkins v. Burlington Northern, Inc.*, 514 S.W.2d 593, 600–01 (Mo. banc 1974); and *Maryland Heights Leasing, Inc. v. Mallinckrodt, Inc.*, 706 S.W.2d 218, 221 (Mo.App.1985).

It is significant to note that this is a claim for surface waters causing flood damage and not a claim as to sewer back-up into the house. The law of liability for diversion of surface waters was changed in Missouri in *Heins Implement Co. v. Missouri Highway and Transportation Commission*, 859 S.W.2d 681 (Mo. banc 1993). In *Heins*, the court discarded the "common enemy" doctrine as to surface waters and adopted the "rule of reasonable use." *Id.* at 688–690. That rule provides that each possessor of land is legally entitled to make reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others; however, the possessor incurs liability when the harmful interference with the flow of surface waters is unreasonable. *Id.* at 689. The rule of reasonable use does not purport to lay down specific rights with respect to surface waters, but "leaves each case to be determined on its own facts, in accordance with general principles of fairness and common sense." *Id.*

The rule of reasonable use makes obsolete the negligence and trespass nomenclature in cases involving the diversion of surface waters, because the concepts of negligence and trespass are merged into, and made subject to, the rule of reasonable use. An attempt to plead a cause of action as to surface water flooding must plead the elements of unreasonable use. The rule of reasonable use is essentially a rule of nuisance law. *See Kueffer v. Brown*, 879 S.W.2d 658, 662 (Mo.App. 1994). In *Heins*, the Supreme Court held that surface water rights and liabilities were not to be analyzed exclusively as property law questions, but were to be analyzed as a form of nuisance. *Id.* at 689. Under *Heins*, upper and lower landowners are to be treated alike and all questions of liability for actions taken with regard to surface water are to be analyzed under a reasonableness standard. *See Kueffer*, 879 S.W.2d at 662.

"Trespass" traditionally would lie for surface water run-off where the owner of an upper tenement "undertakes some alteration of the natural drainage patterns for the purpose of altering those patterns." *Hansen*, 801 S.W.2d at 74; *see also* 75 Am Jur 2d, *Trespass*, § 57 (1991). While *Heins* did not affect all claims of trespass related to water, *Heins* did change the analysis with regard to claims based on diversion of surface water. The Court in *Heins* held, with regard to a claim of property damage against a governmental entity having the power of eminent domain, that the proper remedy for surface water flooding is an action in inverse condemnation. *Heins*, 859 S.W.2d at 693–94. Claims for general damage caused by flooding would therefore, we assume, require a separate claim from a claim for property damage. *See generally Shade v.*

*Missouri Highway & Transp. Comm'n,* 69 S.W.3d 503 (Mo.App.2001).[2] The Thomases did not segregate the claim for property damage from the claim for general damages. They did not plead their claim for property damages by invoking constitutional provisions protecting them from government acquisition of property without due process of law. Nevertheless, they did state a claim for *personal injuries* under the *Heins* case for unreasonable use of the property belonging to the cities.

The petition in this case stated, in pertinent part:

8. On or about April 1, 1991, Plaintiffs Larry and Judy Thomas began having their property, which is located in Kansas City, Missouri, flooded.

* * *

17. In July, 1998, October, 1998, and during the years of 1999 and 2000, after significant rains, once again the ground water and sewage entered the Thomases' property after overflowing the ditch maintained by the defendants, a portion up the hill by the City of Raytown, and the portion alongside Plaintiff's property maintained by City of Kansas City.

* * *

30. The defendants and each of them, since on or about April 1, 1991, has permitted and/or caused a condition to exist whereby ground water and sewage water floods the residential property owned by plaintiffs Larry and Judy Thomas.

31. The above-referenced flooding has occurred periodically and during heavy rains from 1991 to the present.

* * *

35. Plaintiffs Larry and Judy Thomas have, on numerous occasions, requested the (sic) each of the defendants to address the flooding problems which are caused by the aforementioned problems with size of drainage pipes, design of the sewer system and blockage of drainage ditch, which are under the authority and control of either defendant City of Kansas City or defendant City of Raytown.

36. In spite of plaintiffs' numerous requests, defendants have refused and/or failed to take effective action to terminate the flooding problems.

* * *

40. On any given day, the plaintiffs are susceptible to flooding from a thunderstorm which would result in the destruction of additional personal property and damage to the residential structure.

* * *

48. Defendant City of Kansas City, and defendant City of Raytown have knowingly permitted and continue to permit flood water, waste water, and sewage water to flow onto and flood the plaintiffs' property.

* * *

53. Notwithstanding plaintiffs' repeated requests that the defendants discontinue their *unreasonable conduct,* the defendant City of Kansas City, and the defendant City of Raytown have continued to commit and/or permit the *unreasonable conduct* which has caused the flooding and leakage of waste, flood

---

**2.** As to sewer back-ups into a residence (as opposed to surface water flooding), we see no indication that *Heins* changed the analysis. *See, e.g., King v. City of Independence,* 64

S.W.3d 335 (Mo.App.2002) (court decided claim against municipality involving sewer back-ups without reference to *Heins* ).

and sewage water onto plaintiffs' property.

(Emphasis added).

Because the petition refers to the diversion of surface waters by unreasonable conduct causing flooding and damage, we hold that the Thomases stated a cause of action for unreasonable use under *Heins*.

The City of Raytown argues that, under *Heins*, tort claims for damage caused by the diversion of water are barred by sovereign immunity. We disagree. *Heins* specifies that tort claims for damage to *property* may be brought only as claims for inverse condemnation. *Heins* presumably did not preclude claims for personal injury against a governmental entity when there is a basis (such as an allegation that the damages are caused by the city's operation of a proprietary function) for avoiding the bar of sovereign immunity. It appears that the effect of *Heins* was to remove from the realm of tort law actions against governmental bodies for damages to *property* from the diversion of water, and to recharacterize them as constitutional claims under Article I, § 10 of the Missouri Constitution. *See Shade v. Missouri Highway & Transp. Comm'n*, 69 S.W.3d 503, 510 (Mo.App.2001). There is no indication in *Heins* that it changed the law of sovereign immunity as it relates to claims for personal injuries. Accordingly, taking the petition at face value, and setting aside for the moment any concerns related to sovereign immunity or statutes of limitations, we conclude that the petition stated a cause of action for unreasonable use.

### Statute of Limitations

 Because the statute of limitations is a matter of defense, and need not be pleaded by the plaintiff, we can affirm a dismissal on that basis only if it appears from the facts stated in the petition that the statute of limitations bars the claim as a matter of law. *Hamdan v. Bd. of Police Comm'rs for the City of St. Louis*, 37 S.W.3d 397, 399 (Mo.App.2001). Therefore, in attempting to determine whether the trial court properly dismissed the petition, we must examine whether, on the face of the petition, it is apparent that plaintiffs' claim is barred as a matter of law. We note that the petition alleges that the "flooding problem" first occurred in 1991, and that the Thomases "began notifying" the City of Kansas City of the flooding problem at that time. The petition thus judicially admits that damage was ascertainable in 1991, and that the Thomases discerned that the City of Kansas City was at least partially at fault with regard to the cause of the flooding. The trial court may have believed that plaintiffs' claim was barred by the five-year statute of limitations set forth in § 516.120. An action for trespass on real estate is barred if not brought within five years. § 516.120(3). The same would apply to a claim for permanent nuisance. *Campbell v. Anderson*, 866 S.W.2d 139, 142 (Mo.App.1993); *Shade*, 69 S.W.3d at 509–10. If it is a temporary nuisance (that is, an abatable nuisance), the statute of limitations would be ten years. *Campbell*, 866 S.W.2d at 142; *Shade*, 69 S.W.3d at 509–10. An offending structure deliberately constructed to be durable, lasting and unalterable creates a permanent nuisance. *Campbell*, 866 S.W.2d at 143. Because a temporary nuisance can be abated at any time, the period of limitations "runs anew from the accrual of the injury from every successive invasion of interest." *Id.* at 142. Thus, whether successive causes of action arise due to invasions of real property depends upon whether the source of the injury is temporary or permanent. *Shade*, 69 S.W.3d at 513.

 Here, it appears from the face of the petition, giving the petition a liberal

construction in favor of plaintiff, that the alleged problem is abatable. Indeed, the plaintiffs sought injunctive relief for the purpose of obtaining abatement. In any event, when the allegations are doubtful as to whether the pleaded cause of action alleges a permanent nuisance or a temporary nuisance, courts "should treat the nuisance as temporary." *King v. City of Independence,* 64 S.W.3d 335, 339–40 (Mo. App.2002). Accordingly, it appears that the ten-year statute applies, and the petition of plaintiff survives a facial challenge based on the statute of limitations.

The fact that the Thomases refer to their cause of action as one in Trespass raises the question of whether in this court we should accept their characterization and apply the five-year statute of limitations applicable to trespass claims. To do so would result in our affirmance of the dismissal. We find no authority on this issue (and the parties have not addressed this issue) other than authority for the general proposition that it makes no difference what label plaintiffs choose to place on this cause of action. It is the trial court's duty, even as to a poorly worded incorrectly denominated petition, to rule correctly on whether the petition states a claim, regardless of the label. Accordingly, we conclude that, for purposes of the facial evaluation of their petition, the plaintiffs narrowly escape the imposition of the five-year statute of limitations.

### Sovereign Immunity

 We turn next to the issue of sovereign immunity. Sovereign immunity is a general rule of non-liability with regard to tort claims against governmental units. A party pleading an exception to a general rule of non-liability must plead the facts giving rise to the exception. *Cochran v. Burger King Corp.,* 937 S.W.2d 358, 365 (Mo.App.1996); *Adolphsen v. Hall-*

*mark Cards, Inc.,* 907 S.W.2d 333, 338 (Mo.App.1995). Accordingly, to state a cause of action sufficient to survive a motion to dismiss on the pleadings, the petition, when viewed in its most favorable light, must plead facts, which if taken as true, establish an exception to the rule of sovereign immunity. *Burke v. City of St. Louis,* 349 S.W.2d 930, 933 (Mo.1961); *Best v. Schoemehl,* 652 S.W.2d 740, 743 (Mo.App.1983).

With regard to Count IV, by pleading that the injuries were caused by city-constructed drainage systems, the Thomases pleaded facts showing an exception to sovereign immunity because the operation of municipal drainage systems is, as a matter of law, a proprietary function. *See Fletcher,* 708 S.W.2d at 167.

The cities deny that any exceptions to their sovereign immunity were pleaded because, the cities contend, the only exceptions or waivers to sovereign immunity are those set forth in § 537.600, the statute reinstating sovereign immunity. They state that those exceptions are for (1) automobile accidents and (2) the dangerous condition of public property resulting in personal injury. We disagree. The statute implicitly, though not explicitly, retains the exception for proprietary functions as to municipalities. *See Wollard v. City of Kansas City,* 831 S.W.2d 200, 203–04 (Mo. banc 1992); *State ex rel. Bd. of Trustees v. Russell,* 843 S.W.2d 353, 358 (Mo. banc 1992). Thus, granting the plaintiffs a liberal construction of their petition in Count IV, we conclude that they pleaded an exception to the rule of sovereign immunity in their claim for surface flooding caused by the cities' unreasonable use of their respective properties. Count IV was improperly dismissed for failure to state a cause of action.

## Dismissal as Sanction?

The cities argue that even if the Thomases are found to have stated a cause of action, the dismissal should nevertheless be upheld as a sanction of the trial court because the trial court would have been justified in dismissing the claims for failure to comply with the court's order to plead the claims with more specificity. We do not believe that avenue is open to us. The imposition of a sanction is a discretionary matter and not a matter of law. The trial court dismissed the petition specifically *for failure to state a claim.* The court said nothing about a sanction. Nor is it clear that dismissal with prejudice (as opposed to other forms of sanction) would have been a reasonable sanction, in view of the circumstances. There is no reason to believe that the failure to further amend was a contumacious refusal.[3] We cannot assume the court would have dismissed the matter with prejudice as a sanction for failure to plead more specifically.

Moreover, we cannot say dismissal would have been appropriate anyway. The items still unpleaded (more specific descriptions of the location of the land, dates of the occurrences, and dates the cities were notified of the occurrences), related to specific concerns of the trial court. It is not clear why the court wanted a fuller description of the property. We assume, however, that the court also was seeking information concerning dates because of the limitations issue raised by the defendants. The trial court presumably chose, because of the Thomas' failure

to amend, to construe the factual allegations related to the limitations issue *against* the Thomases. We also will assume that the Thomases had nothing more favorable to plead on the limitations issue. However, in view of the fact that we have already determined that, for present purposes, the petition must be construed as governed by the ten-year abatable nuisance statute of limitations, the greater factual detail requested is immaterial. Accordingly, it is not appropriate to uphold the dismissal as though the dismissal were granted as a sanction for failure to plead more specifically.

## Conclusion

Although they have incorrectly denominated it an action for trespass, Plaintiffs pleaded a cause of action in Count IV of their petition for personal injuries caused by surface water diversion and flooding due to the cities' unreasonable use of their respective or joint properties causing damage to plaintiffs.[4] The Thomases pleaded an exception to sovereign immunity by pleading that the damages were caused by the cities' sewer and drain systems, the operation of which is part of the proprietary function of the respective cities. The Plaintiffs' petition is construed for present purposes to plead an abatable nuisance, which means the claims are governed by the ten-year statute of limitations for purposes of our review of the dismissal. From the face of the petition, it cannot be determined that plaintiff's claims for personal injuries are barred by the statute of

---

3. The Thomases were in personal bankruptcy and apparently had discharged their counsel. While that does not excuse their failure to amend, it sheds light on whether the failure to amend was contumacious.

4. Neither city raises a contention that plaintiffs' pleading was deficient in failing to plead claims of property damage as an inverse con-

demnation claim under *Heins.* The Thomases have not asserted in this appeal that they had attempted to plead a claim in inverse condemnation for property damage. Thus, unless they are able to obtain leave to add a count in inverse condemnation, their petition will be construed as asserting a claim for personal injuries but not property damage.

limitations or by sovereign immunity. Accordingly, although the Thomases failed and continue to fail to properly characterize the nature of their claim, the court erred in dismissing the petition of plaintiffs for failure to state a cause of action. The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.[5]

LOWENSTEIN and NEWTON, JJ., concur.

---

**5.** The Thomases' second point on appeal, in which they allege the court erred in denying their motion to stay proceedings under 11 U.S.C. § 362(a), is rendered moot by our ruling on their first point.